# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3671

_____

Ronald O'Neil,

       Appellee,

    v.

City of Iowa City, Iowa;  Iowa City
Airport Commission; Randy Hartwig;
Dan Clay,

       Appellants.

\*
\*
\*
\*
\* Appeal from the United States
\* District Court for the Southern
\* District of Iowa.
\*
\*
\*
\*
\*

_____

Submitted: June 11, 2007
Filed: August 10, 2007

_____

Before MURPHY, BEAM, and SHEPHERD, Circuit Judges.

_____

BEAM, Circuit Judge.

Ronald O'Neil brought suit against the above-named defendants alleging two constitutional violations: (1) retaliation against him for exercising his free speech rights under the First Amendment, and (2) violation of his due process liberty interest in his reputation based on remarks made by defendant Iowa City Airport Commissioners Hartwig and Clay.  In their individual capacities, Hartwig and Clay moved for partial summary judgment based on qualified immunity.  The district court denied the motion and set the case for trial.  Defendants appeal the denial of qualified

immunity. We remand the case so that the district court may properly analyze the defendants' motion for partial summary judgment based on qualified immunity.

## I.    BACKGROUND

Iowa City Municipal Airport is owned by defendant City of Iowa City and managed and controlled by the Iowa City Municipal Airport Commission, which is itself an independent entity.[1] Defendants Hartwig and Clay both sat as members of the Commission. O'Neil was employed–initially full-time–as the Iowa City Airport Manager, reporting directly to the Commission.

In 2004, the Commission sought to secure a grant from the Federal Aviation Administration (FAA) for $1.4 million dollars to be used for a runway expansion project. As Airport Manager, O'Neil acted as the "point person" for the Commission, communicating with the FAA regarding the grant application.

In July 2004, with the grant application still pending, the Commission voted to reduce O'Neil's position to a part-time position, effective November 1, 2004. During an August 10 public meeting discussing airport strategy and planning, a member of the audience asked about the status of the grant, to which O'Neil cryptically replied that "the situation may have changed." He then refused to elaborate further.

Two days later, O'Neil was called before the Commission for a performance evaluation that resulted in the immediate termination of his employment. An August 19, 2004, article from The Daily Iowan quoted Commissioner Clay as saying that O'Neil's public comments were "propagation of misinformation that led to a loss of

---

[1]We adopt these facts from the district court's August 11, 2006, order, which included facts which were either undisputed or recited in a light most favorable to O'Neil, as the party opposing the motion for summary judgment.

trust in [O'Neil's] ability to work for the [C]ommission and the airport." Another newspaper article quoted Commissioner Hartwig as stating that the termination "relate[d] to the trust of the employee, certainly one in a manager's position."

## II. DISCUSSION

Defendants Hartwig and Clay moved for partial summary judgment arguing that they were entitled to qualified immunity for both the termination of O'Neil's employment as well as their published comments relating to O'Neil's trustworthiness. After briefing and a telephone conference call, the court denied the motion.

The Supreme Court has clearly defined the qualified immunity analysis. The court must ask whether:

> "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [official's] conduct violated a constitutional right? This must be the initial inquiry." Saucier v. Katz, 533 U.S. 194, 201 (2001). If, and only if, the court finds a violation of a constitutional right, "the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case." Ibid.

Scott v. Harris, 127 S. Ct. 1769, 1774 (2007) (omission in original). Both the Supreme Court and this circuit "'repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" Saucier, 533 U.S. at 201 (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam)); see Schatz Family ex rel. Schatz v. Gierer, 346 F.3d 1157, 1160 (8th Cir. 2003). We stress the importance of doing the qualified immunity analysis early in litigation because those entitled to qualified immunity hold "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). This "entitlement is an *immunity from suit* rather than a mere defense to liability; and . . . it is effectively lost if a case is erroneously permitted to go to trial." Id.

-3-

In deciding a motion for summary judgment, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the [summary judgment] motion." Scott, 127 S. Ct. at 1774 (quotation omitted) (alteration in original). "In qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts." Id. at 1775. However, this does not mean that the court should "deny summary judgment any time a material issue of fact remains on the [constitutional violation] claim [because to do so] could undermine the goal of qualified immunity to 'avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment.'" Saucier, 533 U.S. at 202 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Rather, the court must take a careful look at the record, determine which facts are genuinely disputed, and then view those facts in a light most favorable to the non-moving party as long as those facts are not so "blatantly contradicted by the record . . . that no reasonable jury could believe [them]." Scott, 127 S. Ct. at 1776.

In this case, the district court's order stated that "[q]ualified immunity provides public officials performing a discretionary function the right to act without personal liability so long as they prove a reasonable person in their circumstances would not have known their actions violate clearly established law." O'Neil v. City of Iowa City, No. 3-05-cv-14-CRW-CFB, Order at 2 (S.D. Ia. Aug. 11, 2006). The court then engaged in its analysis, which, in its entirety, stated:

The court denies defendants' motion for partial summary judgment that asserts the qualified immunity defense. Plaintiff has presented enough documentary evidence in the voluminous summary judgment record to suggest defendants may have terminated plaintiff for expressing his opinions outside the commission public meeting itself; and defendants may have violated his substantive and procedural due process rights by depriving him of an adequate opportunity to challenge his termination and by unjustifiably tarnishing his reputation. Plaintiff may prove at trial that he had a liberty interest in not having his reputation tarnished when his employment was terminated. And plaintiff may prove protected

-4-

speech outside the commission meeting, before or after the meeting, motivated defendants to fire him. So the court gives plaintiff the opportunity at trial to prove his claim that his firing was for reasons other than those defendants have asserted by deposition and affidavit. Plaintiff may be able to prove that he was terminated not for his commission meeting comments but for other actions and comments, with the defendants firing him because they thought plaintiff was making them look bad and because they resented his statements to other persons criticizing their management of the airport.

Order at 2 (footnote omitted). The court then discussed other pending motions.

We explain at the outset that we pass no judgment on whether Commissioners Hartwig and Clay are entitled to qualified immunity. But we are certain, and the case law is clear, that they are entitled to a thorough determination of their claim of qualified immunity if that immunity is to mean anything at all.

At oral argument, O'Neil's counsel assured us that there was extensive argument over the issue of qualified immunity and that while the court's analysis was admittedly "abbreviated," "terse," and "not laid out step-by-step," the court implicitly considered the matter. Giving the court's order the best possible reading, the determination that "[p]laintiff has presented enough documentary evidence" on his First Amendment and due process claims could possibly be intended as a finding that O'Neil has established a constitutional violation–"step one" of Saucier. However, even if that generous reading is accurate (and it is doubtful that it is), there is absolutely no discussion on "step two" of the qualified immunity analysis–whether reasonable officials in the Commissioners' positions would have known that their actions violated O'Neil's constitutional rights. See Saucier, 533 U.S. at 202.

It is possible, we suppose, that the district court considered the issue of qualified immunity and only provided a truncated analysis. However, we can neither

-5-

affirm nor reverse the denial of qualified immunity based on the cursory commentary advanced by the district court in its denial order.

## III.   CONCLUSION

We remand the case to the district court for a more detailed consideration and explanation of the validity, or not, of the defendants' claim to qualified immunity.

_____