# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 06-3293

_____

Roger Brockinton,                                     *
                                                      *
           Appellant,                                 *
                                                      *
      v.                                              *
                                                      *
City of Sherwood, Arkansas, a body                    *
Public; Kel Nicholson, individually and               *
in his Official Capacity as Chief of                  *
Police for Sherwood, Arkansas; John H.                *
Scott, individually and in his Official               *
Capacity; Alexander Kilgore,                          *
individually and in his Official                      *
Capacity; Jerry D. Bradford,                          *    Appeal from the United States
individually and in his Official                      *    District Court for the
Capacity; Christopher R. Cone,                        *    Eastern District of Arkansas.
individually and in his Official                      *
Capacity; Vernon D. Blocker,                          *
individually and in his Official                      *
Capacity; Eddie P. Alvis, individually                *
and in his Official Capacity; James S.                *
Calhoun, individually and in his                      *
Official Capacity; Van Buren County,                  *
Arkansas, a body Public; Scott                        *
Bradley, individually and in his                      *
Official Capacity as Sheriff of                       *
Van Buren County, Arkansas; Randy                     *
Gurley, individually and in his                       *
Official Capacity; Russell Pridgen,                   *
individually and in his Official                      *
Capacity as the former Sheriff of                     *

Van Buren County,                         *
                                          *
          Appellees.                      *
                            _____

                    Submitted: September 28, 2007
                       Filed: October 4, 2007
                            _____

Before BENTON, BOWMAN, and SHEPHERD, Circuit Judges.
                            _____

BOWMAN, Circuit Judge.

Roger Brockinton sued Van Buren County, Arkansas; the City of Sherwood, Arkansas; and several law-enforcement officers under 42 U.S.C. § 1983, alleging violations of his constitutional rights. The District Court[1] granted the defendants' motions for summary judgment, and we affirm.

I.

We recite the facts as alleged in the light most favorable to Brockinton. See Saucier v. Katz, 533 U.S. 194, 201 (2001). Mike Wiley purchased a boat from Charles Mills and stored the boat at Brockinton's home in Sherwood, Arkansas. Later, Wiley borrowed $5,000 from Brockinton and told him to keep the boat as security for the loan. Wiley died in an automobile accident before repaying the loan.

On the day of Wiley's funeral, his girlfriend, Pamela Murphy, called the Van Buren County Sheriff's Department (VBCSD) and reported that she had returned to her home in Van Buren County, Arkansas, to find that her gate and fence had been cut

---

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

down and that her boat was missing. Deputy Randy Gurley met with Murphy, who told Gurley that her neighbor informed her that two men had come to her home and taken the boat. According to Murphy, the neighbor had identified one of the men as Tom Travis, an attorney who had represented Wiley, Murphy, and Brockinton. Murphy provided Gurley with a purported bill of sale for the boat listing herself as a purchaser and Mills and his wife as the owners and sellers.[2] Gurley contacted Mills, who stated that he had given Wiley title to the boat, but that Murphy had not been involved in the sale.[3] Gurley made a report of the incident and forwarded it to his sergeant. The boat was entered as stolen in the Arkansas Crime Information Center (ACIC).

A few days later, Murphy contacted Gurley and informed him that Wiley's sister had told Murphy that she had seen the missing boat at Brockinton's home. Gurley advised Murphy to contact the Sherwood Police Department (SPD). Murphy met with Detective John Scott and told him that a boat had been stolen from her house and that it was located at Brockinton's home. Murphy provided Scott with a document purporting to evidence her ownership of the boat, but Scott did not verify its authenticity. Both Wiley's sister and a friend of Murphy's also told Scott that the boat was at Brockinton's home, although Wiley's sister did not indicate that the boat had been stolen. Scott obtained the theft report from the VBCSD and confirmed that the boat was listed as stolen in the ACIC. Scott drove by Brockinton's home and observed a boat on the property, although it was not fully visible from the street.

---

[2]Mills later examined the bill of sale offered by Murphy and stated that it was a forgery.

[3]The defendants argue that according to Gurley's deposition testimony, Mills told Gurley that Murphy had been involved in the sale. We view the facts in the light most favorable to Brockinton, however, as Murphy's non-involvement in the sale is supported by Mills's affidavit.

Around 4 p.m. that day, several SPD officers went to Brockinton's home. Because Brockinton was not present, the officers asked his neighbor for permission to enter Brockinton's property through her yard, but she refused. The neighbor later witnessed one officer attempting to enter her yard by climbing a fence, but he retreated when she made her presence known. At various points throughout the evening, other neighbors observed the officers attempting to enter Brockinton's property by climbing his fence.

Later that day, Scott obtained a nighttime search-and-seizure warrant for Brockinton's home. In the supporting affidavit, Scott swore that: (1) Murphy had reported to the VBCSD that a boat had been stolen from her residence; (2) Murphy had provided Scott with her written statement to the VBCSD in which she reported that her neighbor had seen two men taking the boat; (3) a friend of Murphy's had informed Scott that he had driven by Brockinton's home earlier in the day and had identified the boat that had been reported stolen; and (4) Wiley's sister had given Scott a written statement in which she stated that she had seen the missing boat at Brockinton's home the previous day.

Around 10 p.m. that night, Scott and several SPD officers executed the warrant and seized the boat from Brockinton's home, cutting his fence in the process. The boat's hull number matched that of the boat reported stolen. Scott contacted the ACIC and was instructed to release the boat to its registered owner. Scott released the boat to Murphy based on her claim to the VBCSD that she was the owner.

Scott left an arrest warrant for theft by receiving on Brockinton's door. Upon returning home, Brockinton called Scott and requested that Scott further investigate. Brockinton informed Scott that the boat had been at his home for several months as evidenced by the height of the grass around its wheels. Scott declined to investigate further and reiterated that Brockinton would be arrested. Brockinton voluntarily surrendered at the SPD station. When Brockinton's attorney, Travis, spoke with Scott

regarding Brockinton's bail, Scott did not question Travis about his involvement in the reported theft, despite the fact that Travis had supposedly been identified by Murphy's neighbor.

The charges against Brockinton were dismissed after it became apparent that Murphy had fabricated her story. Brockinton filed this suit against several law-enforcement officers, Van Buren County, and the City of Sherwood, alleging violations of his rights under the Fourth and Fourteenth Amendments to the United States Constitution, the Arkansas Constitution, and the Arkansas Rules of Criminal Procedure. Brockinton also asserted state-law claims of false arrest, false imprisonment, conversion, malicious prosecution, outrage, and trespass. The District Court granted the defendants' motions for summary judgment, dismissed the federal claims with prejudice, and dismissed the state claims without prejudice. Brockinton appeals the grant of summary judgment as to some defendants.

We review an order granting motions for summary judgment de novo, viewing all facts and inferences in the light most favorable to the nonmovant. Powell v. Yellow Book USA, Inc., 445 F.3d 1074, 1076 (8th Cir. 2006). Summary judgment is appropriate if there is no genuine issue of material fact and the movants are entitled to judgment as a matter of law. Id. In a qualified immunity case, however, "this does not mean that the court should 'deny summary judgment any time a material issue of fact remains on the [constitutional violation] claim [because to do so] could undermine the goal of qualified immunity.'" O'Neil v. City of Iowa City, Iowa, ___ F.3d ___, 2007 WL 2279043 at *2 (8th Cir. Aug. 10, 2007) (quoting Saucier, 533 U.S. at 202) (alterations in O'Neil).

II.

A.

Brockinton first argues that the District Court erred in granting summary judgment to Gurley in his individual capacity. The District Court determined that Gurley was entitled to qualified immunity.

Qualified immunity protects governmental officials from liability for civil damages when they are performing discretionary functions and their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "[T]o withstand a motion for summary judgment on qualified immunity grounds, a civil rights plaintiff must (1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated the plaintiff's clearly established right." Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir.), cert. denied, 519 U.S. 1011 (1996). Our initial inquiry is whether the facts as alleged show that the officers' conduct violated a constitutional right. Scott v. Harris, 127 S. Ct. 1769, 1774 (2007) (citing Saucier, 533 U.S. at 201). If the facts do not show a violation, we need not proceed further with the qualified immunity analysis. Saucier, 533 U.S. at 201.

Brockinton asserts that Gurley violated his right to due process of law under the Fourteenth Amendment by conducting an inadequate investigation. To establish this violation, Brockinton must show that Gurley's failure to investigate was intentional or reckless, thereby shocking the conscience. See Wilson v. Lawrence County, Mo., 260 F.3d 946, 955–56 (8th Cir. 2001). Negligent failure to investigate does not violate due process. Id. at 955 (citing Daniels v. Williams, 474 U.S. 327, 334 (1986)).

Brockinton contends that Gurley should have known that Murphy's allegation that "her" boat had been stolen was false and that by acting on the allegation, Gurley was reckless. Br. of Appellant at 15. As evidence of recklessness, Brockinton points to the inconsistency between Gurley's testimony and Mills's affidavit concerning whether Mills told Gurley that Murphy had been involved in the sale of the boat. Brockinton reasons that this inconsistency "creates a genuine issue of material fact on the question of whether Ms. Murphy ever owned the boat in the first place and whether she was being truthful when she told Mr. Gurley she did." Id. at 18. Brockinton concludes that the information provided by Mills to Gurley "would have led a reasonable police officer in Mr. Gurley's position to conduct a further investigation into the true ownership of the boat and it was reckless for Mr. Gurley not to have done just that." Id. at 20. Brockinton also points to the testimony of Gurley's supervisor that Gurley should have investigated further and to Gurley's previous arrests of Murphy for stealing and theft by receiving as evidence that Gurley's investigation was reckless.

We hold that the District Court did not err in determining that Gurley was entitled to qualified immunity. Gurley examined the purported bill of sale, contacted Mills, and considered Murphy's account before filing the theft report. Although there was a legitimate question concerning Murphy's ownership of the boat, it was not entirely unreasonable for Gurley to credit Murphy's story. Even though Gurley was ultimately incorrect in his conclusion, qualified immunity protects officers from these types of "mistaken judgments." Malley, 475 U.S. at 343. Brockinton's allegations, including that Gurley's supervisor believed that Gurley should have conducted further investigation and that Gurley had previously arrested Murphy for crimes of dishonesty, may show negligence by Gurley, but they do not rise to the level of recklessness that shocks the conscience. Thus, Brockinton has not established a violation of a constitutional right. The Supreme Court has stressed that the Fourteenth Amendment is not "a font of tort law." Paul v. Davis, 424 U.S. 693, 701 (1976); see

also Daniels, 474 U.S. at 332. We therefore agree with the District Court that Gurley was entitled to summary judgment.

B.

Brockinton next argues that the District Court erred in granting summary judgment to former Van Buren County Sheriff Russell Pridgen in his individual capacity. The District Court determined that Pridgen was also entitled to qualified immunity.

A supervisor may be held individually liable under § 1983 if he directly participates in the constitutional violation or if he fails to train or supervise the subordinate who caused the violation. Tilson v. Forrest City Police Dep't, 28 F.3d 802, 806 (8th Cir. 1994), cert. denied, 514 U.S. 1004 (1995). The standard of liability for failure to train is deliberate indifference. City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989). The standard of liability for failure to supervise is "demonstrated deliberate indifference or tacit authorization of the offensive acts." Wilson v. City of N. Little Rock, 801 F.2d 314, 322 (8th Cir. 1986).

Brockinton does not contend that Pridgen directly participated in the alleged constitutional violation but rather that Pridgen failed to properly train or supervise Gurley with regard to theft investigations. Brockinton specifically points to the lack of a departmental policy or training procedure concerning the management of theft investigations. Pridgen responds that he cannot be held individually liable under these theories if Gurley committed no constitutional violation and that Brockinton has alleged no facts that support his claim.

We first note that because the alleged facts do not establish an underlying constitutional violation by Gurley, see Section II.A., supra, Pridgen cannot be held individually liable. And even if we assume that Gurley violated Brockinton's

constitutional rights, we agree with Pridgen that the alleged facts do not establish that Pridgen acted with deliberate indifference in failing to train Gurley. Nor do the alleged facts demonstrate deliberate indifference or tacit authorization by Pridgen in failing to supervise Gurley. In his deposition, Pridgen testified that the Arkansas Law Enforcement Training Academy (ALETA) trained officers on how to take and file a theft report, including how to enter information into the ACIC. Pridgen also testified that he periodically sent his officers to remedial training that focused on investigations and report writing. Conversely, Brockinton only argues that because Pridgen had not instituted policies beyond those imposed by ALETA, Pridgen failed to adequately train or supervise Gurley. Even assuming an underlying constitutional violation by Gurley, we agree with the District Court that Pridgen's use of ALETA and remedial training met the respective constitutional standards. Therefore, Pridgen was entitled to summary judgment.

## C.

Brockinton next maintains that the District Court erred in granting summary judgment to Pridgen and Sheriff Scott Bradley (Pridgen's successor) in their official capacities. Brockinton argues that Pridgen and Bradley failed to institute "any policies, procedures, or training" concerning theft investigations or ACIC reporting. Br. of Appellant at 25. The District Court granted the officials summary judgment because (1) no Van Buren County defendant was found individually liable for an underlying substantive constitutional violation and, alternatively, (2) the alleged facts did not establish an unconstitutional policy or custom of the County.

A suit against a governmental actor in his official capacity is treated as a suit against the governmental entity itself. Hafer v. Melo, 502 U.S. 21, 25 (1991) (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985)). A governmental entity cannot be held vicariously liable for its agent's acts under § 1983. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Rather, a plaintiff must identify a governmental

"policy or custom that caused the plaintiff's injury" to recover from a governmental entity under § 1983. Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 403 (1997) (citations and quotations omitted). A governmental policy "involves a deliberate choice to follow a course of action . . . made from among various alternatives by an official who has the final authority to establish governmental policy." Doe v. Special Sch. Dist., 901 F.2d 642, 645 (8th Cir. 1990) (quotations and citations omitted). A governmental custom involves "a pattern of 'persistent and widespread' . . . practices which bec[o]me so 'permanent and well settled' as to have the effect and force of law." Id. at 646 (quoting Monell, 436 U.S. at 691). "This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." McCoy v. City of Monticello, 411 F.3d 920, 922 (8th Cir. 2005).

As discussed in Section II.A., supra, no Van Buren County defendant is individually liable for an underlying substantive claim. Therefore, the County cannot be held liable under § 1983. Moreover, we note that Brockinton has failed to allege facts that show an unconstitutional policy or custom of the County. Brockinton claims that the ALETA training provided to VBCSD officers was constitutionally inadequate, but he points to no facts that support this bald assertion. We agree with the District Court that Pridgen and Bradley were entitled to summary judgment.

## D.

Brockinton next contends that the District Court erred in granting summary judgment to Scott in his individual capacity. The District Court determined that Scott was entitled to qualified immunity.

Brockinton asserts that Scott violated his Fourth Amendment rights by obtaining a search warrant without first conducting a competent investigation. Brockinton specifically argues that Scott obtained "a search warrant on the basis of

false information given by a completely unreliable informant[, i.e., Murphy]." Br. of Appellant at 27. In the context of obtaining a warrant, a police officer will lose his qualified immunity only if "the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." George v. City of St. Louis, 26 F.3d 55, 57 (8th Cir. 1994) (citing Malley, 475 U.S. at 344–45).

We agree with the District Court that Brockinton has not alleged sufficient facts to support his contention that Scott's belief in the existence of probable cause in the warrant application was unreasonable. Scott was aware of Murphy's report to the VBCSD that her boat had been stolen, Wiley's sister's placement of the boat at Brockinton's home, and another individual's identification of the boat at Brockinton's home. Scott took some steps to corroborate Murphy's report, including personally observing a boat at Brockinton's home and confirming that the boat was reported stolen to the ACIC. Although it is now apparent that Brockinton did not engage in any criminal activity, at the time the warrant was issued, Scott could have reasonably believed that probable cause existed to support the warrant.

Brockinton also asserts that Scott violated his constitutional rights by causing the issuance of an invalid arrest warrant. Brockinton contends that Scott acted unreasonably because Scott did not investigate Travis's potential involvement in the reported theft—even when Travis contacted Scott. We agree with the District Court that given the facts recounted above, at the time Scott caused the issuance of the arrest warrant, he could have reasonably believed that Brockinton had committed theft by receiving, regardless of any involvement by Travis. While in hindsight Scott's investigation was not comprehensive, Brockinton has not alleged sufficient facts to show a constitutional violation.

Brockinton finally asserts that Scott violated his due process rights by releasing the boat to Murphy. Brockinton argues that Scott's failure to verify whether Murphy was the registered owner of the boat was reckless. Assuming that Brockinton had a

constitutionally protected property interest in the boat, Brockinton has not alleged sufficient facts to support the conclusion that Scott's investigation into the ownership of the boat was reckless. Scott concluded that Murphy was the owner based on her claim of ownership to both the VBCSD and to Scott, as well as on the purported bill of sale. While Murphy's claim later proved false, and Scott could have taken additional steps to verify ownership of the boat, the alleged facts do not support a finding of recklessness. We agree with the District Court that Scott did not violate Brockinton's due process rights by releasing the boat to Murphy.

Accordingly, we agree with the District Court that Scott was entitled to summary judgment.

E.

Brockinton next challenges the District Court's grant of summary judgment to SPD Chief Kel Nicholson in his individual capacity. The District Court determined that Nicholson could not be held individually liable because (1) he was not a supervisor during the relevant time period and, alternatively, (2) the alleged facts did not establish a constitutional violation.

Brockinton asserts that Nicholson failed to adequately train or supervise Scott. We first note that because the alleged facts in this case do not establish an underlying constitutional violation by Scott, see Section II.D., supra, Nicholson cannot be held individually liable. We also note that Brockinton averred in his complaint that Nicholson was not the SPD chief during the events in question. Rather, Nicholson has been substituted as a party in his official capacity for his predecessor, against whom the failure-to-train and failure-to-supervise claims were directed. Am. Compl. at ¶ 2, 22, 24–25, 32. Because Nicholson was not Scott's supervisor during the relevant time period, he cannot be held personally liable for failing to train or supervise Scott. See Graham, 473 U.S. at 165–66 & nn.10–11 (explaining the differences between official-

capacity suits and individual-capacity suits). Accordingly, we agree with the District Court that Nicholson was entitled to summary judgment.

F.

Brockinton finally argues that the District Court erred in granting summary judgment to the City of Sherwood and to Nicholson in his official capacity. The District Court determined that the alleged facts did not support Brockinton's claims of an unconstitutional policy, practice, or custom, or failure to train.

The suit against Nicholson in his official capacity is treated as a suit against the City of Sherwood. Applying the standards of liability articulated above, we conclude that the alleged facts do not establish liability against the City of Sherwood or Nicholson. We note that the alleged facts do not show a constitutional violation by an individual Sherwood defendant, and therefore, neither the City nor Nicholson can be liable under § 1983. Furthermore, the alleged facts do not show an unconstitutional policy, custom, or failure to train. Brockinton contends that the ALETA training in theft investigation was constitutionally inadequate but does not point to any facts to support his assertion; he merely claims that Scott's investigative shortcomings are sufficient evidence of a violation. There is uncontroverted evidence in the record, however, that in addition to the ALETA training, SPD officers received on-the-job training and testing in investigating crimes and determining probable cause for warrants. The SPD also required detectives such as Scott to take additional training on these topics. The record does not show an unconstitutional failure to train nor does it show an unconstitutional policy or custom. We therefore agree with the District Court that the City of Sherwood and Nicholson were entitled to summary judgment.

## III.

In sum, while Brockinton has alleged facts indicating that both the VBCSD and the SPD made mistakes in judgment that caused him harm, § 1983 does not provide the appropriate remedy for his alleged injuries.  Brockinton remains free to pursue his state-law claims, which were dismissed without prejudice by the District Court.  The judgment of the District Court is affirmed.

_____