# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2847

_____

| | | |
|---|---|---|
| Salvadora Katosang, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| Angela Wasson-Hunt; James Wilson; | * | |
| Terry Brady; Karl Zobrist; | * | [UNPUBLISHED] |
| Kay Barnes, Mayor; Pearl Fain, | * | |
| | * | |
| Defendants - Appellants. | * | |

_____

Submitted: April 14, 2010
Filed: August 26, 2010

_____

Before WOLLMAN, MURPHY, and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

Following her termination as a probationary analyst at the Kansas City, Kansas Police Department's Office of Citizen Complaints (OCC), Salvadora Katosang brought this lawsuit under 42 U.S.C. § 1983. Katosang alleges that Pearl Fain, her former supervisor and the Director of the OCC, and the members of the Board of Police Commissioners (collectively, "defendants") retaliated against Katosang for exercising her free speech rights under the First Amendment. The defendants moved

for summary judgment based on qualified immunity.[1] The district court denied the motion. The defendants appeal the denial of qualified immunity. We remand the case so that the district court may properly analyze the defendants' motion for summary judgment based on qualified immunity.

I.

In construing the facts underlying this interlocutory appeal of the district court's denial of qualified immunity, we must view "the summary judgment facts as described by the district court." Nelson v. Shuffman, 603 F.3d 439, 446 (8th Cir. 2010) (quoting Beck v. Wilson, 377 F.3d 884, 889 (8th Cir. 2004)). The district court stated the facts, in their entirety, as follows:

> The record, construed in the light most favorable to Plaintiff, reveals the following facts. Following a six-month probationary period as a newly hired Analyst for the OCC, Plaintiff met in private with Fain to review her performance as a probationary employee. Plaintiff's evaluation was positive. After the review was completed, the evaluation form had been signed by Plaintiff and Fain, and Fain was preparing to take it to the Personnel Department, Plaintiff told Fain that she had some concerns she wanted to discuss. Plaintiff then told Fain that she had concerns about the way Fain was recording and awarding compensatory time, sick time, and vacation time; specifically, that the leave policy was being administered in an unfair and discriminatory way. Following this

---

[1] The defendants' first summary judgment motion, seeking dismissal of Katosang's claim on the merits, is not the subject of this interlocutory appeal, and we only briefly address it as relevant here. The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri, denied the first summary judgment motion, concluding that there were disputed facts and that a jury could find that Katosang was terminated in retaliation for exercising her First Amendment rights. Following Judge Sachs's denial of the first summary judgment motion, this case was transferred to another district judge.

> discussion, Fain recommended that Plaintiff's employment at the OCC
> be suspended and then terminated.

Katosang v. Wasson-Hunt, No. 06-0887-CV-W-ODS, 2009 WL 2069973, at *1 (W.D. Mo. July 14, 2009) (unpublished).

Following her termination, Katosang filed a complaint against the defendants in the Circuit Court of Jackson County, Missouri, alleging that she was terminated for exercising her First Amendment right to freedom of speech. Katosang alleged that she "informed defendant Fain that [Katosang] believed Fain had exercised discriminatory practices in the [OCC], mistreated minorities in the office, and arbitrarily awarded sick, vacation and compensatory time to employees and [had] not followed department policies regarding the same." (Compl. ¶ 15.) Because Katosang's claims were made pursuant to section 1983, the defendants removed her complaint to federal court. See Ali v. Ramsdell, 423 F.3d 810, 812 (8th Cir. 2005) ("[F]ederal § 1983 claims [are] within the district court's original jurisdiction." (citing 28 U.S.C. § 1441(b)).

The defendants sought summary judgment on the basis of qualified immunity. The district court denied the motion, stating:

> In denying Defendants' first Motion for Summary Judgment, Judge Sachs ruled there were disputed facts on the issues of whether Plaintiff's communication was motivated by her personal interests rather than by public interests, and on whether Plaintiff's statements were part of the duties of her job. He also ruled there was a factual dispute regarding whether Plaintiff was terminated because of the content of her statements or because of the manner in which she made them. The same facts that are in dispute on the issue of whether there was a constitutional violation are necessary to resolve whether the right violated was clearly established. Defendants may be entitled to qualified immunity, but the record at this time does not allow the Court to resolve the issue. After a jury makes the necessary factual findings, the Court will be in a position to rule on these legal issues. Accordingly, Defendants' second

-3-

Motion for Summary Judgment on the limited issue of qualified immunity must be denied.

Katosang, 2009 WL 2069973, at \*2. The defendants bring this interlocutory appeal.

II.

Although we generally lack jurisdiction to review the denial of summary judgment, we possess jurisdiction "to consider an interlocutory appeal from the denial of summary judgment based on qualified immunity." Nelson, 603 F.3d at 446. In this interlocutory appeal, we review de novo the denial of summary judgment based on a claim of qualified immunity. Id.

Whether a government official is entitled to qualified immunity involves two inquiries: (1) "whether the facts, viewed in the light most favorable to the plaintiff, establish a violation of a constitutional right," and (2) "whether the relevant constitutional right was clearly established at the time of the alleged violation." Id. The court "retain[s] discretion to decide which of the two questions to answer first." Heartland Acad. Cmty. Church v. Waddle, 595 F.3d 798, 805 (8th Cir. 2010); see Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).

Here, the district court denied qualified immunity on the basis of the existence of disputed facts, declining to undertake either of the aforementioned qualified immunity inquiries. In general, summary judgment is not appropriate where there are genuine issues of material fact; however, a qualified immunity case is unique. See Brockinton v. City of Sherwood, Ark., 503 F.3d 667, 671 (8th Cir. 2007). "In a qualified immunity case, . . . 'the court should [not] deny summary judgment any time a material issue of fact remains on the [constitutional violation] claim [because to do so] could undermine the goal of qualified immunity.'" Id. (quoting O'Neil v. City of Iowa City, Iowa, 496 F.3d 915, 917 (8th Cir. 2007) (second and third alterations in original)); see Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) ("[E]ntitlement [to

qualified immunity] is an immunity from suit rather than a mere defense to liability; and . . . it is effectively lost if a case is erroneously permitted to go to trial."); O'Neil, 496 F.3d at 917 ("Both the Supreme Court and this circuit 'repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part on other grounds by Pearson, 129 S. Ct. at 818)). Instead,

> the court must take a careful look at the record, determine which facts are genuinely disputed, and then view those facts in a light most favorable to the non-moving party as long as those facts are not so "blatantly contradicted by the record . . . that no reasonable jury could believe [them]."

O'Neil, 496 F.3d at 917 (quoting Scott v. Harris, 550 U.S. 372, 378, 380 (2007)). "[T]his usually means adopting . . . the plaintiff's version of the facts." Scott, 550 U.S. at 378. Here, the district court did not follow this dictate, and its reasoning for denying qualified immunity—the existence of fact issues—is contrary to qualified-immunity case law. See Saucier, 533 U.S. at 201; Mitchell, 472 U.S. at 526; Brockinton, 503 F.3d at 671; O'Neil, 496 F.3d at 917.

Furthermore, we have previously remanded a qualified immunity case on the basis that "the [district] court's analysis was admittedly 'abbreviated,' 'terse,' and 'not laid out step-by-step,'" in order for the court to conduct "a thorough determination of [the] claim of qualified immunity" to which government officials "are entitled" under "the case law." O'Neil, 496 F.3d at 918. Specifically, "there [was] absolutely no discussion on . . . whether reasonable officials in the [defendants'] positions would have known that their actions violated [the plaintiff's] constitutional rights." Id. O'Neil concluded, "[W]e can neither affirm nor reverse the denial of qualified immunity based on the cursory commentary advanced by the district court in its denial order." Id. The district court's analysis in this case is more truncated than that of the district court in O'Neil.

We pass no judgment on whether the defendants are entitled to qualified immunity as we can neither affirm nor deny qualified immunity where the district court failed to undertake the necessary analysis, i.e. applying the qualified immunity inquiry to the facts in the light most favorable to Katosang. See O'Neil, 496 F.3d at 918 ("We remand the case to the district court for a more detailed consideration and explanation of the validity, or not, of the defendants' claim to qualified immunity."); see also Empire Dist. Elec. Co. v. Rupert, 199 F.2d 941, 945 (8th Cir. 1952) ("[T]his court is an appellate court sitting to review alleged errors of law, and not to try the action de novo." (quotation omitted)). We decline to conduct this analysis in the first instance. See O'Neil, 496 F.3d at 917; see also Rupert, 199 F.2d at 945. Accordingly, we remand the case to the district court for consideration of the validity of the defendants' claim to qualified immunity, viewing, where necessary, the facts, and all reasonable inferences thereto, in favor of Katosang.[2]

### III.

For the foregoing reasons, we remand this case to the district court for further analysis of the qualified immunity issue consistent with this opinion.

_____

_____

[2]Katosang sued (1) Fain in her individual and official capacities and (2) the Board members in their official capacities. (Pet. ¶ 2-7.) We note that qualified immunity "only extends to claims against government employees sued in their individual capacities." VanHorn v. Oelschlager, 502 F.3d 775, 778 (8th Cir. 2007); see Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999) ("Qualified immunity is not a defense available to governmental entities, but only to government employees sued in their individual capacity."); see also Kentucky v. Graham, 473 U.S. 159, 167 (1985) ("The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, qua entity, may possess, such as the Eleventh Amendment."). In denying qualified immunity, the district court did not consider this limitation on the doctrine. Because we are remanding the issue of qualified immunity to the district court, we leave this matter to the district court.