# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1829

_____

| | | |
|---|---|---|
| Michael Handt, | * | |
| | * | |
| Plaintiff–Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Rick Lynch; Floyd County, Iowa, | * | |
| | * | |
| Defendants, | * | |
| | * | |
| Steve Koffron; Mark Jacobsen; | * | |
| Steve Takes; Carrie Carson, | * | |
| | * | |
| Defendants–Appellants. | * | |

_____

Submitted: December 13, 2011
Filed: June 14, 2012

_____

Before LOKEN, MURPHY, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

After suffering a month-long incarceration that was not ordered by a state court, plaintiff Michael Handt brought this 42 U.S.C. § 1983 action, alleging that his federal and state constitutional rights were violated when the defendants unlawfully seized, searched, and detained him. Steve Koffron, Mark Jacobsen, Steve Takes, and Carrie Carson (collectively "defendants") moved for summary judgment on the basis of

qualified immunity. The district court denied their motion for summary judgment. Defendants now seek interlocutory review of that decision. Because the district court failed to complete the qualified immunity analysis, we vacate the district court's order and remand for a thorough consideration of the defendants' claim that they are entitled to qualified immunity.

I.

We state the facts in the light most favorable to the plaintiff and in accordance with the factual findings made by the district court. Sitzes v. City of West Memphis, Ark., 606 F.3d 461, 464 (8th Cir.), cert. denied, 31 S. Ct. 828 (2010).

On June 2, 2008, Handt appeared before an Iowa state court judge to be sentenced on his guilty plea to Operating While Intoxicated, Third Offense. The state court sentenced Handt, in relevant part, as follows:

> Defendant is committed to the custody of the Director of the Department of Corrections for no more than five years. The Defendant shall be placed in a 321J Program when space becomes available. Pending space becoming available in a 321J Program, the Defendant shall be placed under the Pre-Placement Supervision of the Department of Correctional Services. The Department shall endeavour [sic] to enroll the Defendant in the Pre-Placement Supervision Program within 24 hours of the receipt of the Court's Order.
>
> . . .
>
> The Defendant is advised that if he violates any of the conditions of the Pre-Placement Supervision Program, he may be immediately taken into custody and held pending space becoming available in a 321J Program.
>
> The Defendant is also advised that a violation of the pre-placement conditions of probation could result in a hearing to determine whether

the sentence should be modified and the Defendant should be placed in a penal institution rather than a 321J Program.

After the sentencing, Handt returned home to await later placement in the 321J alcohol treatment program. Despite the court's order, the following day, Sheriff Rick Lynch took Handt into custody at his home and directed a deputy to transport Handt to the Iowa Medical Classification Center in Oakdale, Iowa (IMCC), a secure facility that serves as the reception center for all offenders sentenced to a prison term in Iowa. Upon transport, Handt believed that IMCC offered a 321J treatment program. When he arrived at IMCC, defendants Koffron, Jacobsen, and Takes took him into custody. They did so without receiving a copy of the June 2 sentencing order. As part of the admissions procedure, the intake officers strip searched Handt. The day after Handt was processed into IMCC, two certified copies of the sentencing order were transmitted to the facility.

When Handt realized that IMCC did not offer a 321J treatment program, he notified defendant Carson, his assigned counselor, by submitting repeated written statements ("kites") to her. In his kites, Handt protested his placement at IMCC and informed her that the sentencing order did not provide for his incarceration. Despite his repeated requests for review of his sentencing order, defendant Carson ignored Handt's pleas.

Eventually a letter Handt wrote about his incarceration found its way to the desk of the state court judge who sentenced Handt to the 321J alcohol treatment program. That judge ordered Handt's return to Floyd County and directed that the original sentencing order be followed, which required Handt's release from custody until a bed was located in the alcohol treatment program. Pursuant to this order, Handt was released from custody and allowed to return to his home.

Handt then initiated this section 1983 action alleging violations of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights, as well as violations of Iowa law. The defendants sought summary judgment on the basis of qualified immunity. The district court held that the intake-officer defendants—Koffron, Jacobsen, and Takes—were not entitled to qualified immunity because Handt's right to avoid imprisonment at IMCC under the sentencing order and Iowa law was clearly established at the time he was taken into custody. As to defendant Carson, the district court held that there was a reasonable inference that procedures existed for defendant Carson to inform the IMCC superintendent of Handt's claim that his custody violated the sentencing order and Carson failed to do so. Accordingly, the district court denied defendants' summary judgment motion, and the defendants now appeal.

II.

"Ordinarily, we do not have jurisdiction to hear an immediate appeal from a district court's order denying summary judgment, because such an order is not a final decision." Gardner v. Bd. of Police Comm'rs, 641 F.3d 947, 950 (8th Cir. 2011) (citing 28 U.S.C. § 1291). Because the district court denied defendants qualified immunity, we have jurisdiction to review this matter as an interlocutory appeal under the collateral order doctrine. See Johnson v. Jones, 515 U.S. 304, 317 (1995). "'A defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a genuine issue of fact for trial'; the appealable issue is a purely legal one." White v. McKinley, 519 F.3d 806, 812 (8th Cir. 2008) (quoting Johnson, 515 U.S. at 319-20). "More precisely, we have jurisdiction to consider the purely legal issue of whether the facts, taken in the light most favorable to the plaintiff[], support a finding that the state defendants violated [Handt's] clearly established constitutional rights." Langford v. Norris, 614 F.3d 445, 455 (8th Cir. 2010) (citations omitted). "If the order turns on issues of fact, rather than an 'abstract issue of law,' we lack jurisdiction over the appeal because the decision is not a final

order immediately appealable under the collateral order doctrine." <u>Aaron v. Shelley</u>, 624 F.3d 882, 883-84 (8th Cir. 2010) (citing <u>Johnson</u>, 515 U.S. at 313-18).

Suits against officials in their individual capacity "seek to impose personal liability upon a government official for actions he takes under color of state law." <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985). To establish liability, the plaintiff must show that the official, acting under color of state law, caused a deprivation of a federal right. <u>Id.</u> at 166; <u>see</u> <u>Hayes v. Faulkner Cnty., Ark.</u>, 388 F.3d 669, 675 (8th Cir. 2004) (holding plaintiff "must prove: (1) the official's conduct deprived him of constitutional rights, and (2) the official's actions were taken under color of law"). Defendants may be entitled to qualified immunity for those claims brought against them in their individual capacities. <u>McRaven v. Sanders</u>, 577 F.3d 974, 980 (8th Cir. 2009). "Qualified immunity protects a government official from liability in a section 1983 action unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." <u>Henderson v. Munn</u>, 439 F.3d 497, 501 (8th Cir. 2006) (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). "To overcome the defense of qualified immunity, a plaintiff must show: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." <u>Howard v. Kan. City Police Dep't.</u>, 570 F.3d 984, 988 (8th Cir. 2009). The court may first address either prong. <u>Id.</u> (citing <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009)).

Because qualified immunity "is an immunity from suit rather than a mere defense to liability[,] . . . it is effectively lost if a case is erroneously permitted to go to trial." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985). Thus, it is necessary for the district court in the first instance to thoroughly review each claim of qualified immunity. We have previously vacated and remanded denials of summary judgment orders for further consideration of a defendant's qualified immunity claim when the order is too truncated or cursory "to provide a basis for us to affirm or reverse the

-5-

denial of qualified immunity." Jones v. McNeese, 675 F.3d 1158, 1162 (8th Cir. 2012); see O'Neil v. City of Iowa City, Iowa, 496 F.3d 915, 918 (8th Cir. 2007); see also Katosang v. Wasson-Hunt, 392 F. App'x 511, 513 (8th Cir. 2010) (unpublished per curiam).

In his Second Amended Complaint, Handt raised five claims of constitutional violation against each defendant in his or her individual capacity: (1) a Fourth Amendment unreasonable seizure violation, (2) a Fourth Amendment unreasonable search violation, (3) a Fifth and Fourteenth Amendment substantive due process violation, (4) a Fifth and Fourteenth Amendment procedural due process violation, and (5) an Eighth Amendment cruel and unusual punishment violation.

In this case, the district court performed a detailed review concerning sentences issued under Iowa Code section 321J.2 and the obligation under Iowa Code section 904.502 for the superintendent of IMCC to notify the director of the Department of Corrections if there is a question about the propriety of an inmate's incarceration. The court failed, however, to undertake the qualified immunity analysis as to each of the constitutional claims that form the basis of this section 1983 action. As to defendants Koffron, Jacobsen, and Takes, the court stated:

> The Court further holds that the facts and inferences in the record, when construed in the light most favorable to Handt, are sufficient to establish a violation of his constitutional rights. The Court finds genuine issues of material fact preclude summary judgment on qualified immunity on the claims against the defendant intake officers. The issues include, but are not limited to, whether the circumstances of Handt's intake and commitment raised any questions regarding the propriety of the commitment; whether, if a question of the propriety of the commitment was raised, the defendant intake officers took appropriate action; whether the defendant intake officers participated in, or knew about, the commitment of Handt to incarceration at IMCC without receiving a certified copy of the execution or any other appropriate basis;

whether the officers submitted Handt to a strip search upon his initial commitment to IMCC, when the officers knew the commitment was made without receiving a certified copy of the execution or any other appropriate basis; and whether the defendant officers took any action to notify prison officials about Handt's commitment without receipt of a certified copy of the execution or any other appropriate basis. Handt has presented enough evidence in opposition to Defendants' motion for this case to proceed to trial.

(Order; Doc. 47; 3/10/11.)

In analyzing the claim against defendant Carson, the court similarly stated:

The Court concludes the facts and inferences shown, when construed in the light most favorable to Handt, are sufficient to establish a violation of his constitutional rights with regard to his claims against Carson. The Court finds that Handt has raised genuine issues of material fact sufficient to preclude summary judgment in favor of Carson on the basis of qualified immunity. The issues include, but are not limited to, whether Carson followed the prison's procedures in response to Handt's notice to her that his detention was contrary to the court's sentencing order; whether she notified the IMCC superintendent, or any prison official, that Handt had raised a question regarding the propriety of his commitment or detention at IMCC; whether she reasonably believed Handt had raised a question regarding the propriety of his commitment or detention at IMCC; whether, and how, Carson answered Handt's kites questioning his prison commitment and detention; whether she ignored his questioning of the propriety of his commitment and detention; and whether Carson's actions caused the continued unlawful detention of Handt.

(Order; Doc. 47; 3/10/11.)

Here, as in <u>Jones</u>, "we are unable to discern if the district court even applied both steps of the qualified immunity inquiry to all of the summary judgment claims."

Jones, 675 F.3d at 1163. In the background section of the order, the district court did an admirable job of explaining the facts of this case and construing those facts in the light most favorable to Handt. This is not, then, a situation where we are called upon to "undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed." Johnson, 515 U.S. at 319. The problem here arises instead in the analysis of the qualified immunity claims. For instance, the district court repeatedly stated in the analysis that there were material issues of fact in dispute. When considering the issue of qualified immunity, however, the district court is to "view those facts in a light most favorable to the non-moving party as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe [them].'" O'Neil, 496 F.3d at 917 (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)) (alterations in original). Then the court should determine if those facts demonstrate a constitutional violation that is clearly established. The district court's decision, however, lacks consideration of the individual defendants' actions with respect to each of the constitutional claims.

As relevant here, Handt has raised five separate claims of constitutional violations (unlawful seizure, unlawful search, denial of procedural due process, denial of substantive due process, and cruel and unusual punishment) against two sets of defendants (the intake officers and Carson). Thus, the court must analyze whether the facts pertaining to each defendant, or in this case the two sets of defendants, support Handt's claims of constitutional violations. Upon completing this analysis, it seems clear that, on at least some claims, the issuance of summary judgment will be appropriate. For example, it is difficult for us to see how Carson's involvement in this matter, which occurred after Handt was admitted to IMCC, could support Handt's Fourth Amendment claim of unlawful search against Carson, as that violation

presumably happened before Carson ever interacted with Handt.[1]  These defendants are entitled to consideration by the district court of their claims to qualified immunity as to each of the constitutional claims asserted against them.  Therefore, it is necessary that we remand this matter to the district court to engage in a full qualified immunity analysis in the first instance.

## III.

Accordingly, we vacate and remand to the district court for further consideration.

_____

[1]We note that the Supreme Court's recent decision in Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington, 132 S. Ct. 1510 (2012), addresses a Fourth Amendment search claim in the context of a detainee's admission to a jail facility and may impact the district court's review of this claim as to all defendants.