United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

No. 96-2469NI

_____

| | | |
|---|---|---|
| Harold D. Williams, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | On Appeal from the United |
| | * | States District Court for |
| | * | the Northern District |
| Larry Brimeyer, sued as Larry Brimyer; | * | of Iowa. |
| John Sissel; and Erma Heiken, | * | |
| sued as Irma Heiken, | * | |
| | * | |
| Appellants. | * | |

_____

Submitted: February 12, 1997
Filed: June 25, 1997

_____

Before RICHARD S. ARNOLD, Chief Judge, HANSEN and MORRIS SHEPPARD
ARNOLD, Circuit Judges.

_____

RICHARD S. ARNOLD, Chief Judge.

Harold Williams, an inmate at Iowa Men's Reformatory, brought this action under 42 U.S.C. § 1983 against prison officials when he was denied two pieces of incoming mail he had ordered from the Church of Jesus Christ Christian. The District

Court[1] awarded him $1.00 in compensatory damages and $500.00 in punitive damages from each of two defendants, and ordered that Williams be allowed to receive, read, and possess the materials he sought. The State of Iowa appeals that decision, and we affirm.

## I.

Harold Williams wrote away twice to the Church of Jesus Christ Christian ("CJCC") requesting that CJCC publications be sent to him at the Iowa Men's Reformatory ("IMR"). The publications were entitled, "Church of Jesus Christ Christian: Prison Ministries" and "Notice Pertaining to Civil Rights." In both instances, the mail room clerk at IMR withheld the publications from Williams, sending him instead contraband notices informing him that he could not receive the CJCC materials.[2]

Williams brought this case to challenge the handling of the CJCC materials he ordered. He believes that he should have been able to receive them and that prison officials denied him the materials under a complete ban of all materials from the CJCC. A blanket ban on CJCC materials, without review of their individual content, would violate the First Amendment. Murphy v. Missouri Dep't of Corrections, 814 F.2d 1252, 1257 (8th Cir. 1987).

---

[1] The Hon. John A. Jarvey, United States Magistrate Judge for the Northern District of Iowa, to whom this case was referred for disposition under 28 U.S.C. § 636(c).

[2] According to the contraband notices Williams received, the CJCC materials were denied under Iowa Department of Correction ("IDC") Rule 4(a) as "likely to be disruptive or produce violence." The rule itself has been held facially valid, Nichols v. Nix, 810 F. Supp. 1448, 1460 (S.D. Iowa 1993), aff'd per curiam, 16 F.3d 1228 (8th Cir. 1994) (unpublished opinion), and is not at issue in the present case.

II.

The District Court found that, at the time Williams was denied CJCC materials, prison officials at IMR were imposing a blanket ban on publications from CJCC. The Court held defendants John Sissel and Erma Heiken liable for denying Williams these materials, and awarded Williams $500.00 in punitive damages from each of them.

Prison officials withheld CJCC materials from Williams on two occasions. The first denial occurred in September 1993. When Williams received a contraband notice instead of the CJCC information he expected, he asked Heiken, the mail room clerk who signed the contraband notice, why. She informed him that CJCC materials had been denied by the Iowa Department of Corrections.[3] Williams then asked how he could appeal the denial. Heiken told him he could either have the material destroyed or sent outside the prison to a third party. Williams then filed a grievance with the prison's grievance officer, contending that the prison had a blanket ban on materials from the CJCC. Williams specifically complained that his mail could not have been reviewed for content by the IDC before it was denied, because the staple had not been removed from the packet. The grievance was denied on September 10, 1993.

There seems to have been some confusion within the institution, and perhaps within the IDC, about the status of CJCC materials at that time. Part of Heiken's job

---

[3]The IDC monitors publications which enter its facilities. The Department has a review procedure by which it evaluates publications to determine if they are "consistent with institutional goals of maintaining internal order, safety, security, and rehabilitation." Appellant's App. 20. Access to a given publication may be controlled or denied completely. IDC maintains a list which shows whether a given publication is accepted, controlled, or denied. If materials which are denied are mailed to an inmate, the prison withholds the materials and gives the inmate a contraband notice, like those Williams received. Upon receiving a contraband notice, an inmate can appeal the denial. He can also request that the denied material be either destroyed or sent to a third party outside the prison.

as mail room clerk was to check and see whether incoming publications were allowed into the prison by consulting a publications list. The list in effect in September 1993 had an entry which simply showed "CJCC" as denied. The list did not show that there was more than one CJCC publication. As far as anyone who consulted that list would have known, "CJCC" was the name of a publication. When Heiken processed Williams's first mailing from CJCC, she therefore assumed it was denied, based on its return address stamp. She relied on that list when she told Williams that the specific publication had been reviewed and denied. The official who denied Williams's grievance apparently shared this confusion, because in responding to Williams's complaint he explained that individual mailings do not have to be reviewed (as Williams's wasn't) when the publication at issue has at some point been reviewed, and denied, by the IDC. He, too, may have thought a publication called "CJCC" had been reviewed and denied by the IDC because of the entry in the publications list.

The second time officials withheld CJCC materials from Williams, the list had been updated to show "CJCC" as approved. Unfortunately, Heiken neglected to consult the list and denied the publication based on her memory. Williams informed her of the decision in Nichols v. Nix, which held a blanket ban invalid and required that some CJCC publications be allowed into Iowa's prisons. When his argument met with no success he asked that the materials be sent to his attorney.

III.

Williams was correct when he charged that his mailings from the CJCC were being denied without having gone through the prison's review process. There was, in effect, a blanket ban on those materials, and Williams's First Amendment rights were violated when the prison withheld them from him.[4] We have held on several occasions

---

[4]The prison officials deny there was a blanket ban. The trial judge found as a fact that there was such a ban, and we will overturn such a finding only if it is clearly

that a total ban on CJCC materials would be unconstitutional, e.g.,  Wiggins v. Sargent, 753 F.2d 663, 668 (8th Cir. 1985), and have affirmed a district court opinion requiring that some CJCC materials be allowed into Iowa correctional institutions.  Nichols v. Nix, 16 F.3d 1228 (8th Cir. 1994) (per curiam) (unpublished opinion).

IV.

The next question is whether Williams is entitled to receive the particular materials that were withheld from him in this case.  The District Court entered an injunction assuring his right to receive, read, and possess these materials.  The question, generally stated, is whether a ban on these particular items is reasonably related to a legitimate penological objective.  See Turner v. Safley, 482 U.S. 78 (1987). In considering this question, we must decide, "after an independent review of the evidence," whether the "regulation is . . . an exaggerated response to prison concerns." Salaam v. Lockhart, 905 F.2d 1168, 1171 (8th Cir. 1990), cert. denied, 498 U.S. 1026 (1991).

We affirm the action taken by the District Court.  The incoming publications did not counsel violence, and there is no evidence that they have ever caused a disruption. Certainly the views expressed in the publications are racist and separatist, but religious literature may not be banned on that ground alone.  See, e.g., Murphy v. Missouri Department of Corrections, 814 F.2d at 1256-57.  The materials involved in previous cases decided in favor of prisoners, including Nichols, are quite similar to the materials involved in this case, though perhaps somewhat less particularized with respect to the subject of integrated celling.  It is true, of course, that inmates have no right to insist on segregated cells, but this does not mean that they must surrender their religious

_____

erroneous.  Given Sissel's testimony that a ban was in effect in 1993 through the summer of 1994, and the entry in the official publications list showing "CJCC denied" during the same time period, we see no clear error in the trial judge's finding.

-5-

beliefs, or that receiving materials expressing those beliefs are necessarily related to violence or would cause refusal to occupy a cell with inmates of other races. Deputy Warden Sissel testified that he was not able to find any relationship between the CJCC and refusals to cell with black inmates. Finally, the Publication Review Committee twice examined these very materials and voted without dissent to approve their entry into the prison. Prison authorities, in other words, have not been consistent in rejecting these materials, a fact which leads us to believe that rejection, when it occurred, was an exaggerated response. On balance, though the question is not free from doubt, we believe that the District Court resolved it correctly.

V.

We turn, finally, to that portion of the judgment below that assessed punitive damages against defendants Sissel and Heiken. The District Court found that both of these defendants were "callously indifferent to plaintiffs' right to read CJCC materials." Slip op. 15. Thus, the correct legal standard was applied. Punitive damages may be awarded when a defendant's conduct is motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. Smith v. Wade, 461 U.S. 30, 56 (1983); Gloria Coleman v. Nurse Ruth Rahija, No. 96-1351 (8th Cir., June 5, 1997). The question before us, then, is whether the finding of callous indifference is clearly erroneous.

We are unable to say that the District Court clearly erred in making this finding. In September 1993, when CJCC materials were first withheld from Williams, the IDC's publications list showed simply that "CJCC" was denied. This action occurred after the decision of the District Court in Nichols, which had held a blanket ban unlawful. Sissel knew about this decision, knew also that a blanket ban remained in effect, but did nothing to correct the situation. We think this conduct can permissibly be described as "callous indifference."

At the time of the second rejection of the materials, in May 1994, the publications list had been corrected, but Heiken did not bother to consult the list. She simply rejected the publication because of her belief that the blanket ban was still in effect. Heiken was made aware at the time of the decision in <u>Nichols</u>, which had then been affirmed by this Court, and she also knew that a blanket ban was unconstitutional because she was herself a party in <u>Rice v. IMR</u>, No. C91-0107 (N.D. Iowa 1993), which had followed <u>Nichols</u>. It was not at all out of bounds for the District Court to characterize this indifference to legally binding precedent as "callous indifference." Nor, in our view, is an award of $500.00 against each of these defendants large enough to constitute an abuse of discretion.

VI.

The judgment of the District Court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.