# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2751

_____

| | | |
|---|---|---|
| Anthany Kaden, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of South Dakota. |
| Daryl Slykhuis, Warden, | * | |
| South Dakota State Penitentiary; | * | [PUBLISHED] |
| Samantha Stobbe, Unit | * | |
| Coordinator (Ret.); SCO D | * | |
| Ewer, Mailroom; Gina Butterworth, | * | |
| Secretary for the Warden's Office, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: June 16, 2011
Filed: August 25, 2011

_____

Before LOKEN, BEAM, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

Anthany Kaden is an inmate at the South Dakota State Penitentiary (SDSP) who alleges, pursuant to 42 U.S.C. § 1983, that the warden, the warden's secretary, the unit coordinator, and a mailroom employee violated the First Amendment when Kaden received notice that a magazine he had ordered was rejected from the mailroom because it was too violent. Kaden alleges that all of the named parties were

involved in denying his grievance about failing to receive the magazine in question, and seeks damages and the right to receive the magazine.

The magistrate judge recommended dismissing the case prior to service, see 28 U.S.C. §§ 1915 and 1915A, finding that SDSP's regulation governing mail censorship was valid, and concluding that Kaden did not sufficiently allege in his complaint that the rejected publication fell outside the regulation. Kaden objected to the report and recommendation. In his objections, Kaden identified the magazine as "Shonen Jump," described by Kaden as "a Japanese Comic Book" which depicts cartoons that children watch on television. He further alleged that SDSP officials did not explain why the publication was rejected under the regulation. Kaden asserted that the prison allowed other magazines that depict violence, including "WWE, Guns and Ammo, Karate, Football Weekly and Boxing." Kaden also stated that the prison allowed other inmates to receive materials which facilitated the creation of violent role-playing games. In the penultimate paragraph of his objections to the report and recommendation, Kaden asked that his objections be treated as an amendment to his original § 1983 petition.

The district court adopted the magistrate judge's report and dismissed the case, stating that as a matter of law, Kaden failed to show that the rejection of his requested comic book rose to the level of a constitutional violation. Kaden argues that it is at least plausible that denial of the comic book violated the First Amendment and that the district court should have at least required defendants to answer. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (holding that complaint must contain sufficient plausible factual matter to state a claim for relief on its face).

We review this issue de novo. Moore v. Sims, 200 F.3d 1170, 1171 (8th Cir. 2000) (per curiam). In addition to the allegations in the original complaint, we will construe a prisoner plaintiff's objections to the magistrate judge's report as a motion

for leave to amend the original complaint. Thornton v. Phillips Cnty., Ark., 240 F.3d 728, 729 (8th Cir. 2001) (per curiam).

While prisoners retain their constitutional rights, limitations may be placed on the exercise of those rights because of the needs of the penal system. Turner v. Safley, 482 U.S. 78, 84-85 (1987). Constitutional claims that would normally receive strict scrutiny are evaluated under a lesser standard of scrutiny in the prison setting. Id. at 89. Accordingly, prison officials may lawfully censor prison mail that is detrimental to the security, good order and discipline of the institution. Thornburgh v. Abbott, 490 U.S. 401, 404 (1989). The mail policy must advance "a legitimate penological interest[]." Id. at 413 (quotation omitted). To decide whether a particular policy advances such an interest, we must consider (1) whether there is a rational connection between the regulation and a neutral and legitimate governmental interest; (2) whether alternative means exist for the inmates to exercise their constitutional rights; (3) the impact of accommodating that right on other inmates and prison personnel; and (4) whether reasonable alternatives to the regulation exist. Safley, 482 U.S. at 89-90.

Generally speaking, a prison regulation restricting incoming mail deemed likely to incite violence "is related to the institutional needs of maintaining a controlled and secure environment among the prison population." Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 986 (8th Cir. 2004). However, if a valid prison regulation is applied to particular mail items in such a way as to negate the legitimate penological interest, the regulation may be unconstitutional as applied to those items. Id. Before censoring materials, prison authorities must review the content of each particular item received. Id. On appeal, we must independently review the evidence to determine whether SDSP's decision to apply the regulation and withhold Kaden's magazine was an "exaggerated response to prison concerns" and therefore unconstitutional as applied. Williams v. Brimeyer, 116 F.3d 351, 354 (8th Cir. 1997) (quotation omitted).

-3-

Accepting as true Kaden's allegations, including the additional details provided in his objections to the magistrate judge's report and recommendation, we find that these allegations were sufficient to plausibly state a claim under § 1983. At this extremely early stage of the litigation, there is a reasonable inference that SDSP's policy was unconstitutionally applied to the censored publication. See Iqbal, 129 S. Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Kaden's suit was dismissed before SDSP officials were required to answer the complaint, let alone to advance evidence that might help us decipher whether SDSP's decision to apply the violent- prison-mail regulation to this publication was appropriate, or an exaggerated response to prison concerns.

Accordingly, we reverse and remand for further consideration of the validity of SDSP's regulation as applied to the publication at issue.

_____