# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3872

_____

Christopher M. Payne

*Plaintiff - Appellee*

v.

Fred Britten; Christopher Connelly; Michelle Hillman; Lee Tinkler; Benny
Noordhoek; Carina McRoberts; Jennifer Kunzman

*Defendants - Appellants*

Jerry Bell; Mailroom Person 1; Mailroom Person 2

*Defendant*s

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: June 26, 2013
Filed: April 16, 2014

_____

Before RILEY, Chief Judge, MELLOY and KELLY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Christopher Payne is an inmate at Nebraska's Tecumseh State Correctional
Institution (the prison). Prison officials censored and confiscated Payne's incoming

and outgoing mail. Payne filed a lawsuit asserting various claims, including 42 U.S.C. § 1983 claims alleging violations of the First and Fourteenth Amendments. Payne named several of the prison officials as defendants, asserting that they wrongfully censored and confiscated his mail.

The officials moved for dismissal on the pleadings pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting qualified immunity. The district court did not rule on the motion but converted it to a motion for summary judgment. The officials reasserted qualified immunity. The district court granted summary judgment to the officials in part on a limited issue, but otherwise denied summary judgment and again declined to rule on qualified immunity. Finally, the officials filed a motion for reconsideration seeking a ruling on qualified immunity. The district court denied the motion for reconsideration. The officials appeal.

We affirm in part, reverse in part, and remand. When an official properly and timely files a motion for dismissal or for summary judgment asserting qualified immunity, the official is entitled to a ruling on the issue of qualified immunity. As such, the district court must issue a reviewable ruling—either granting or denying qualified immunity—before requiring the officials to progress further in litigation at the district court.

I. Background

A. Facts

Payne is serving sentences for two convictions of first-degree sexual assault of a child. See Neb. Rev. Stat. § 28-319.01. Between October 13, 2010, and March 23, 2011, prison officials reviewed and held correspondence mailed by and to Payne. According to the officials, the censored correspondence was pedophilia-related and included efforts by Payne to obtain sexually related stories, pictures, and information

about children, including information about Payne's prior victims. Also according to the officials, some of the correspondence indicated Payne was attempting to share such materials and run a business (from inside the prison) selling such materials to others both inside and outside the prison. The officials assert that some correspondence suggested Payne was attempting to contact his prior victims. The officials explain that a March 23, 2011 letter mailed to Payne contained: potential contact information for some of Payne's victims; a reference to "BL" (which the officials interpret as meaning "boy love"); an explanation that "the reason we can't find a good address for [victim's name[1]] is that he is a kid"; and "possible addresses" for a certain individual with notes that two of the addresses were associated with someone sharing the individual's name but who were "too old."

The officials confiscated the mail and alerted the FBI, which ultimately decided not to open a criminal investigation. Payne disputes the officials' classification of his mail as pedophilia-related and disputes assertions regarding the contents of his mail. Prison officials continue to hold the confiscated mail, and, other than the March 23, 2011 letter, such mail has not been made available for the courts' review.

B.    Procedural History

On February 11, 2011, Payne filed his § 1983 complaint in the District of Nebraska against several of the officials. On September 26, 2011, the officials moved to dismiss the individual capacity claims on the pleadings under Federal Rule of Civil Procedure 12(b)(6) because the officials "are immune from suit pursuant to the doctrine of qualified immunity." The district court did not rule on the motion to dismiss. Rather, on March 8, 2012, the district court issued an order instructing the officials to supplement the record with evidence supporting their claims for qualified

---

[1]To protect Payne's victims, we do not include identifying information in this opinion.

immunity. In a May 15, 2012 order, the district court stated "it is now apparent that the court must consider matters outside of the pleadings to resolve this matter." The district court stated that it would treat the pending motions for dismissal as motions for summary judgment and provided the parties with an opportunity to submit additional evidence. The district court specifically directed the officials "to file, under seal, a copy of the March 23, 2011, letter."

In response to the district court's conversion of their dismissal motion into a summary judgment motion, the officials again invoked qualified immunity. At the same time, the officials complied with the district court's order and filed under seal a copy of the March 23, 2011 letter. They also submitted a memorandum explaining certain names and terms used in the letter. On September 19, 2012, the district court granted summary judgment to the officials on the "First and Fourth Amendment claims relating to the censoring and monitoring of [Payne's] mail as part of a criminal investigation." The district court denied the motion for summary judgment in all other respects, stating, "questions of fact remain regarding the content of [Payne's] incoming and outgoing mail and the reasonableness of the [officials'] continued detention of that mail." The district court identified the surviving claims as "claims regarding the continued detention of [Payne's] mail after [the FBI] declined to initiate a criminal investigation." The district court's order did not decide whether the officials were entitled to qualified immunity or assess whether any alleged violations were of clearly established federal law.

The officials then filed a "Motion for Reconsideration and Determination of Qualified Immunity." The district court denied the motion without ruling on qualified immunity. The officials filed this interlocutory appeal.

II.    Discussion

Ordinarily, our court lacks jurisdiction to review denials of motions to dismiss and motions for summary judgment because neither is a final decision. See, e.g., Swint v. Chambers Cnty. Comm'n, 514 U.S. 35, 41–42 (1995). When a denial turns on qualified immunity, however, our court has appellate jurisdiction to decide whether, as a purely legal matter, the denial was erroneous. See, e.g., Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). Our court has jurisdiction over such interlocutory appeals because "[q]ualified immunity is 'an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" Scott v. Harris, 550 U.S. 372, 376 n.2 (2007) (quoting Mitchell, 472 U.S. at 526).

"Like denials of qualified immunity, a refusal to rule on qualified immunity is effectively unreviewable on appeal because once the defendant has had to proceed to trial, he or she has lost the benefit of qualified immunity, that is, the entitlement to be free from suit." Parton v. Ashcroft, 16 F.3d 226, 228 (8th Cir. 1994) (exercising jurisdiction and remanding "for a ruling on the issue of qualified immunity"). The potentially lost benefits of qualified immunity include the costs and expenses of litigation, and discovery in particular, which is a type of burden distinct from appeals and other lawyer-driven aspects of a case. Other lost benefits include the lost opportunity to appeal to our court and, ultimately, to petition the Supreme Court for certiorari. For this reason, both the Supreme Court and our court "repeatedly have stressed the importance of resolving [qualified] immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam); O'Neil v. City of Iowa City, Iowa, 496 F.3d 915, 917 (8th Cir. 2007).

Our court, therefore, has jurisdiction over interlocutory appeals arising not only from a district court's reasoned denial of qualified immunity, but also from a district court's failure or refusal to rule on qualified immunity. In the latter instance, however,

our court only exercises its jurisdiction to compel the district court to decide the qualified immunity question.  See, e.g., Robinson v. Mericle, 56 F.3d 946, 947 (8th Cir. 1995) (per curiam) (remanding "to the district court with directions to decide the issue of qualified immunity"); Craft v. Wipf, 810 F.2d 170, 173 (8th Cir. 1987) (per curiam) (finding appellate jurisdiction for the limited purpose of remanding for a ruling on qualified immunity). In Craft, for example, the district court "simply did not rule on the qualified immunity issue," effectively depriving the defendant of qualified immunity.  Id. at 173.  Citing the Fifth Circuit's holding in Helton v. Clements, 787 F.2d 1016 (5th Cir. 1986) (per curiam), that "an order which declines or refuses to rule on . . . a claim of immunity 'is an appealable "final decision" within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment,'" id. at 1017 (quoting Mitchell, 472 U.S. at 530), our court "took jurisdiction of the appeal" for the limited purpose of remanding "to the District Court for a ruling on the qualified immunity issue," Craft, 810 F.2d at 173.

Because the district court in the present case did not decide whether the officials are immune from Payne's suit, we have jurisdiction to order a remand.  Exercising that jurisdiction, we now, as we must, remand the case for the district court to conduct the proper analysis.  See, e.g., Craft, 810 F.2d at 173.  It is "certain, and the case law is clear, that [the officials] are entitled to a thorough determination of their claim[s] of qualified immunity if that immunity is to mean anything at all."  O'Neil, 496 F.3d at 918.

We write further because, although we are compelled to remand, we are sympathetic with the district court in this case and understand clearly why the district court followed the seemingly reasonable, but impermissible, path that it chose.  The prison officials are legally entitled to a ruling on their assertions of qualified immunity.  In the present case, as with many cases, however, such a ruling would appear to be at the expense of efficiently getting to the heart of the material issue in

the case.  Here, that issue clearly involves a simple fact question: what is in the withheld mail (much of which is mail that only the officials have seen)?

In this regard, the contents of the withheld mail appear to be contested.[2]  As we understand the core legal issues surrounding the allegations in this case, any analysis of the merits of the qualified immunity defense will require the district court to assess whether the regulation or policy at issue under which the mail is being held is valid and neutral and whether it addresses a legitimate penological concern.  See Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 985–86 (8th Cir. 2004).  A qualified immunity analysis will then require the district court to conduct an independent review of the evidence to determine if the officials have demonstrated an exaggerated response to those penological concerns in relation to a particular item of mail that has been confiscated.  Id.  See also Williams v. Brimeyer, 116 F.3d 351, 354 (8th Cir. 1997) (stating that the court must conduct "'an independent review of the evidence'" to determine if the prison officials response to prison concerns was "'exaggerated'" (quoting Salaam v. Lockhart, 905 F.2d 1168, 1171 (8th Cir. 1990))); Kaden v. Slykhuis, 651 F.3d 966, 969 (8th Cir. 2011) (per curiam) ("[I]f a valid prison regulation is applied to particular mail items in such a way as to negate the legitimate penological interest, the regulation may be unconstitutional as applied to those items. . . . On appeal, we must independently review the evidence to determine whether [the] decision to apply the regulation and withhold [the particular mail items] was an exaggerated response to prison concerns and therefore unconstitutional as applied.") (internal citations and quotation marks omitted).  In the absence of such evidence, the district court is bound to take the plaintiff's allegations as true and presume that the mail does not, in fact, contain material that runs afoul of any neutral and valid restrictions.  As such, it would seem that if the content of the mail is contested, the district court cannot grant qualified immunity to the officials in this case without first reviewing the withheld mail.

---

[2]And perhaps not frivolously given the FBI's election not to pursue the matter.

Simply put, the district court appears to have correctly determined that this is a case where, ultimately and eventually, the documents will matter for the qualified immunity analysis. Nevertheless, the district court may not force public officials into subsequent stages of district court litigation without first ruling on a properly presented motion to dismiss asserting the defense of qualified immunity. Courts may ask only whether the facts as alleged plausibly state a claim and whether that claim asserts a violation of a clearly established right. Kaden, 651 F.3d at 969 ("At this extremely early stage of the litigation, there is a reasonable inference that [the prison]'s policy was unconstitutionally applied to the censored publication." (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."))).

In summary, all parties at all times are entitled to their appropriate share of process. The defendants in this case, like any public officials, are entitled to a reasoned denial or grant of their claim of qualified immunity at the motion to dismiss stage, the summary judgment stage, and any other permissible stage at which a proper motion is filed. By following the path described herein, courts will ensure in all cases that public officials receive this process.

III.    Conclusion

We reverse the district court's order converting the officials' motion to dismiss into a motion for summary judgment; vacate the district court's partial denial of the officials' motion for summary judgment; and remand with instructions for the district court to decide, consistent with this opinion, whether the officials are entitled to qualified immunity on the pleadings under Rule 12(b)(6).

_____

RILEY, Chief Judge, concurring in part and dissenting in part.

Because the district court had a responsibility to provide the officials with a prompt and thorough individualized determination of their right to qualified immunity, see, e.g., Stanton v. Sims, 571 U.S. ___, ___, 134 S. Ct. 3, 4-5 (2013) (per curiam), I concur in the background section of the court's opinion (Part I) and the well-reasoned first four paragraphs of the court's discussion section (Part II). See ante at 2-6.

Reading the rest of the majority's opinion, it is unclear to me what "part" of the district court's rulings the majority purports to "affirm," ante at 2, given that the majority's conclusion makes no mention of an affirmance, ante at 8. I would reverse the district court's *sua sponte* conversion of the officials' motion to dismiss into a motion for summary judgment; vacate the district court's denial of the officials' motion for summary judgment; and remand with instructions to decide whether the officials are entitled to qualified immunity, first on the pleadings under Federal Rule of Civil Procedure 12(b)(6) and, if not, then on the record under Federal Rule of Civil Procedure 56(a). To the extent the majority's vague judgment deviates from this course, I respectfully dissent.

### A. Jurisdiction

I think it important to begin by emphasizing our precedent that our court's "jurisdiction to review the qualified immunity issue on interlocutory appeal depends upon whether the district court *actually ruled* on the issue." Bradford v. Huckabee (Bradford I), 330 F.3d 1038, 1040 (8th Cir. 2003) (emphasis added). A casual reader might think this statement means we lack jurisdiction unless the district court makes a merits determination as to qualified immunity, but that reading is foreclosed by Bradford I itself: we exercised jurisdiction to "remand to the district court *for such a determination*," 330 F.3d at 1041 (emphasis added). The Bradford I opinion's reference to "jurisdiction to *hear* th[e] appeal," id. (emphasis added), merely meant

our court would not reach the *merits* of a qualified immunity question in a case where the district court, whether intentionally or through neglect, failed to answer the question (i.e., "actually ruled").  As the court's opinion explains, ante at 5-6, we have long exercised our interlocutory jurisdiction to order district courts to issue the necessary qualified immunity rulings when they fail to do so.  See, e.g., Robinson v. Mericle, 56 F.3d 946, 947 (8th Cir. 1995); Parton v. Ashcroft, 16 F.3d 226, 228 (8th Cir. 1994);  Craft v. Wipf, 810 F.2d 170 (8th Cir. 1987) (per curiam).

Most circuits follow our approach.  See, e.g., Wallin v. Norman, 317 F.3d 558, 563 (6th Cir. 2003) ("[T]he district court's refusal to address the merits of the defendants' motion based on qualified immunity was a conclusive determination for the purpose of allowing an interlocutory appeal."); Lowe v. Town of Fairland, Okla., 143 F.3d 1378, 1380 (10th Cir. 1998) (same); Jenkins v. Medford, 119 F.3d 1156, 1159 (4th Cir. 1997) (same); Collins v. Sch. Bd. of Dade Cnty., Fla., 981 F.2d 1203, 1205 (11th Cir. 1993) (same); Zayas-Green v. Casaine, 906 F.2d 18, 23 (1st Cir. 1990) (same); Smith v. Reagan, 841 F.2d 28, 31 (2d Cir. 1988) (same); Helton v. Clements, 787 F.2d 1016, 1017 (5th Cir. 1986) (per curiam) (same).  It appears only the Ninth Circuit disagrees on the jurisdictional question.  See, e.g., Miller v. Gammie, 335 F.3d 889, 894-95 (9th Cir. 2003) (en banc) (holding that "[d]istrict court orders deferring a ruling on immunity for a limited time to ascertain what relevant functions were performed generally are not appealable").  But the Ninth Circuit achieves essentially the same result by treating a notice of appeal from a district court's failure to decide qualified immunity as a petition for writ of mandamus to compel the district court to decide the question.  See id.  As our court—now joined by a majority of circuits—has recognized since at least 1989, see Craft, 810 F.2d at 173, the Ninth Circuit's approach is unnecessarily formalistic.

## B.    This Case

District courts have an obligation to "resolv[e] [qualified] immunity questions at the *earliest possible stage* in litigation."  Hunter v. Bryant, 502 U.S. 224, 227

(1991) (per curiam) (emphasis added). In Payne's case, the earliest possible stage was the officials' motion to dismiss for failure to state a claim upon which relief could be granted. The officials appropriately based their motion on qualified immunity, invoking their entitlement to be free of the burden of further litigating Payne's claims. To rule on that motion, "[t]he district court needed to *first* determine whether the complaint alleged enough facts to demonstrate the violation of a *clearly established* statutory or constitutional right." Bradford I, 330 F.3d at 1040 (emphasis added). Instead of making that determination and ruling on the motion by either granting or denying qualified immunity at the pleading stage, the district court refused the officials the decision—one way or the other—to which they were entitled.

On its own motion, the district court directed the officials to "supplement the record with properly authenticated evidence to show that they were censoring and confiscating [Payne's] mail in accordance with a legitimate criminal investigation." That *sua sponte* order was an abuse of discretion. The officials had a right to a qualified immunity ruling *on the pleadings*. See, e.g., id. To vindicate their right to such a ruling, the officials had no obligation to submit *any* "properly authenticated evidence." On the contrary, qualified immunity provides "an entitlement not to . . . face [such] burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated *clearly established* law." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). This entitlement is so important that it may be asserted, appealed, reasserted, and again appealed at multiple stages in the same case. See Behrens v. Pelletier, 516 U.S. 299, 307 (1996).

As Behrens makes clear, by refusing to decide whether Payne's "complaint alleged enough facts to demonstrate the violation of a clearly established statutory or constitutional right," Bradford I, 330 F.3d at 1040, the district court deprived the officials of two definite opportunities and a third possible opportunity to avoid the cost and inconvenience of producing evidence. First, a decision by the district court on the pleadings that the officials were entitled to qualified immunity would obviously

have freed the officials from the burden of ongoing litigation. Second, if the district court decided the officials were not entitled to qualified immunity, the officials could have immediately appealed that denial to our court. See Behrens, 516 U.S. at 307. This second opportunity to challenge the sufficiency of the plaintiff's pleadings frequently proves decisive. See, e.g., Bradford v. Huckabee (Bradford II), 394 F.3d 1012, 1016 (8th Cir. 2005) (reversing a pleading stage denial of qualified immunity on appeal after the Bradford I remand). Third, if our court decided the officials were not entitled to qualified immunity, the officials could have petitioned the Supreme Court for a writ of certiorari—an unlikely but possible path to qualified immunity at the pleading stage.[3] See, e.g., Ashcroft v. al-Kidd, 563 U.S. ___, ___, 131 S. Ct. 2074, 2080 (2011) ("correct[ing]" the Ninth Circuit's "analysis at both steps of the qualified-immunity inquiry" on an interlocutory appeal from a district court's denial of a motion to dismiss based on qualified immunity).

The district court also abused its discretion by *sua sponte* converting the officials' motion to dismiss into a motion for summary judgment without deciding whether Payne's complaint sufficiently alleged any violation of a clearly established right. It is true Rule 12(d) requires district courts to treat Rule 12(b)(6) motions as summary judgment motions under Rule 56 "[i]f, on a motion under Rule 12(b)(6)[,] . . . matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). But the only "matters outside of the pleadings" in Payne's record were two documents the district court *sua sponte* compelled the officials to

_____

[3]Appealing a case does entail a litigation burden, but in advance of any obligation to submit evidence, that burden primarily falls on the lawyers whose job it is to handle such cases. By contrast, requiring defendant officials to submit evidence burdens the officials themselves: they often must find documents, answer interrogatories, undergo depositions, and prepare affidavits. The doctrine of qualified immunity ensures that corrections officials and police officers are not pulled off their rounds and beats to respond to lawsuits until a plaintiff sufficiently pleads a clearly established violation.

provide.  The officials did not present any document to the court on *their* Rule 12(b)(6) motion.

The district court summarily declared "questions of fact remain regarding the content of [Payne's] incoming and outgoing mail and the reasonableness of the [officials'] continued detention of that mail."  Were these questions genuinely disputed?  See Fed. R. Civ. P. 56(a).  Were these facts "material"?  Id.  The district court did not answer these relevant questions.  Instead, the district court explained "[t]he record before the court does not contain copies of the letters held from October 13, 2010, to November 16, 2010."  On that basis alone, the district court denied summary judgment, without resolving qualified immunity.

The officials again moved "for *a* determination of their claim of qualified immunity."  (Emphasis added).  The officials argued they should be "immune from further burdens of litigation absent a determination of their defense of qualified immunity based on . . . clearly established law."  The officials were right.  See, e.g., Pearson v. Callahan, 555 U.S. 223, 231 (2009) ("[T]he 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that '"insubstantial claims" against government officials [will] be resolved prior to discovery.'" (second alteration in original) (quoting Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987))).

### C.    Judicial Economy

Although the district court's obligation to *rule* on qualified immunity is beyond debate, the majority does not content itself with following this law.  Instead, the majority deems it appropriate to "write further."  Ante at 6.  The majority implies that following the law and remanding for the necessary rulings in this case will waste judicial resources. The majority—after recognizing that our court should not address the merits—speculates that a denial of qualified immunity on the merits is inevitable. I cannot join these gratuitous portions of the majority's opinion.

-13-

Even if the majority were right that following the correct procedure will "be at the expense of efficiently getting to the heart of the material issue," ante at 6, any dissipation of judicial resources stems not from our court's following the law but from the district court's failure to do so. Had the district court issued a reasoned denial of qualified immunity, our court could have resolved this case on the merits. Instead, the "efficient" course of action has resulted in remarkable inefficiency. In the "efficient" legal world, judges lead investigations, demand evidence, and issue orders untethered to the parties' pleadings. This "efficient" legal world does exist in continental Europe and elsewhere on our planet. But it is foreign to our Anglo-American legal system, and (at least in cases involving governmental parties) it is prohibited by our Constitution's federalism and separation of powers and our adherence to the rule of law. I strongly disagree with the majority's implication that procedural rules, e.g., Fed. R. Civ. P. 12(b)(6), and legal principles, e.g., Pearson, 555 U.S. at 231, are not worth following whenever they might appear inexpedient. Even if producing the withheld mail would quickly end the case, the officials' choice to seek a qualified immunity determination on the pleadings must be respected, and the law must be followed.

In any event, I am far from convinced the officials' request for a qualified immunity ruling on the pleadings is as futile as the majority predicts. The equitable question whether Payne should receive his mail may very well require the district court to review the mail, but the legal question whether Payne is entitled to damages may not. Neither Payne, nor the district court, nor the majority cite a single case giving the officials "fair and clear warning" that withholding the mail at issue violated the Constitution. United States v. Lanier, 520 U.S. 259, 271 (1997). My search of case law from the Supreme Court and the federal circuit courts disclosed none.

What I found instead were numerous cases tending to support the officials' position. See, e.g., Bell v. Wolfish, 441 U.S. 520, 547 (1979) (granting prison officials "wide-ranging deference in the adoption and execution of policies and

-14-

practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security"); Ahlers v. Rabinowitz, 684 F.3d 53, 65 (2d Cir. 2012) ("Because of the state's interest in treating [an inmate's] sexual deviance, [state officials] had a justification for an embargo on" "images of children in bathing suits."); Wishnatsky v. Schuetzle, 141 F.3d 1172 (8th Cir. 1998) (unpublished per curiam) (upholding ban on mail containing images of fetuses); Dawson v. Scurr, 986 F.2d 257, 259 (8th Cir. 1993) (upholding prison regulations banning publications portraying "child sex acts" and limiting access to publications involving certain adult sex acts); Bullock v. McGinnis, 14 F.3d 604, 1993 WL 533325, at *4 (7th Cir. Dec. 21, 1993) (unpublished table decision) (upholding prison officials' decision to censor "mail that contained a photograph of an adult female partially exposing her genitalia to two clothed young children and two letters that referred to the photograph"); Harper v. Wallingford, 877 F.2d 728, 733 (9th Cir. 1989) (upholding ban on mail from the "North American Man/Boy Love Association").

Our circuit has even upheld a blanket ban on prisoners' "receiv[ing] through the mail secondary religious materials" and "send[ing] out commercially prepared greeting cards." Jones v. Banks, 51 F. App'x 608, 609 (8th Cir. 2002) (unpublished per curiam). In child sexual assault cases, other circuits have gone even further—for example, upholding blanket bans on internet use *post-release* for defendants who, like Payne, found victims online. See, e.g., United States v. Paul, 274 F.3d 155, 169 (5th Cir. 2001); United States v. Crandon, 173 F.3d 122, 127-28 (3d Cir. 1999). It is difficult to imagine how a reasonable prison official reviewing such cases could expect this case's lesser restrictions on prisoner communication to ever give rise to civil damages. The best that could be said for Payne is that the case law does not specifically address claims of the precise sort he raises because no court has ever addressed the particular circumstances of this case. But that would still leave the officials entitled to qualified immunity.

### D. Qualified Immunity Principles

Like the majority, I am "sympathetic with the district court in this case," <u>ante</u> at 6, but for very different reasons. I am sympathetic to the difficult task any district court confronts trying to apply the complex doctrine of qualified immunity in the face of opinions which demand a ruling, <u>see</u> <u>ante</u> at 5-6, without providing any guidance on how to reach a correct ruling. Rather than discussing the "efficiency" of not following the law, the court's opinion should clarify how to apply this law. Having prepared some thoughts in the hope of assisting with the qualified immunity analysis, I offer the following.

A determination of the qualified immunity question at a particular stage in the proceedings does not necessarily mean a grant of immunity: often, the determination entails a reasoned *denial* of immunity. But without a thorough qualified immunity analysis by the district court—either granting or denying immunity—"we cannot fulfill our function of review." <u>Robbins v. Becker</u>, 715 F.3d 691, 694 n.2 (8th Cir. 2013) (internal quotation omitted). Exercising our court's "well-established . . . supervisory authority over lower courts," <u>Starr v. Mandanici</u>, 152 F.3d 741, 750 (8th Cir. 1998), we must ensure district courts make "findings of fact and conclusions of law, similar by analogy to Fed. R. Civ. P. 52(a)(2) (addressing 'an interlocutory injunction'), sufficient to permit our court (1) to determine what facts the district court assumed, in the light most favorable to the nonmoving party, and (2) to evaluate the district court's individualized legal analysis." <u>Robbins</u>, 715 F.3d at 694.

Qualified immunity requires district courts to answer two questions. Question one: did each individual defendant official violate a constitutional or statutory right? <u>See</u>, <u>e.g.</u>, <u>LaCross v. City of Duluth</u>, 713 F.3d 1155, 1158 (8th Cir. 2013). Question two: was the right clearly established when the violation occurred? <u>See</u>, <u>e.g.</u>, <u>id.</u> A district court may answer either question first. <u>See</u> <u>Pearson</u>, 555 U.S. at 236. For example, a district court could begin and end with the first question, granting qualified immunity because there was no constitutional violation. <u>See</u>, <u>e.g.</u>, <u>Burke v. Sullivan</u>,

-16-

No. 4:10CV588 CDP, 2011 WL 3235761 (E.D. Mo. July 27, 2011), aff'd 677 F.3d 367, 373 (8th Cir. 2012) (affirming the "well-reasoned opinion and judgment of the district court").  Or a district court could begin and end with the second question, granting qualified immunity because, even if the defendant's conduct violated a constitutional right, the right was not clearly established.  See, e.g., Sisney v. Reisch, 674 F.3d 839, 844, 847 (8th Cir. 2012) (affirming a district court's grant of qualified immunity which "did not expressly examine the first prong," but "[i]nstead . . . focused on the second prong").  What a district court cannot do is *deny* qualified immunity without resolving *both* questions in the plaintiff's favor.  See, e.g., Stanton, 571 U.S. at ___ - ___, ___, 134 S. Ct. at 4-5, 7; Krout v. Goemmer, 583 F.3d 557, 564 (8th Cir. 2009).  Neither is a district court permitted to decline to answer either question.  See, e.g., Hunter, 502 U.S. at 227;  O'Neil v. City of Iowa City, Iowa, 496 F.3d 915, 918 (8th Cir. 2007).

At the pleading stage, these principles mean an individual defendant official is entitled to qualified immunity "*unless* [the] plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  Al-Kidd, 563 U.S. at ___, 131 S. Ct. at 2080 (emphasis added) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  At the summary judgment stage, a defendant is entitled to qualified immunity unless "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation."  Howard v. Kan. City Police Dep't, 570 F.3d 984, 988 (8th Cir. 2009).  At the trial stage, a defendant is entitled to qualified immunity unless (1) the jury reasonably finds facts establishing that the defendant violated a constitutional or statutory right, and (2) the right was clearly established at the time the violation occurred.  See, e.g., Luckert v. Dodge Cnty., 684 F.3d 808, 817 (8th Cir. 2012).

The first question develops from stage to stage: it evolves from a construction of the pleadings, to a review of the record in the light most favorable to the plaintiff, to a deferential consideration of facts found by a jury. The second question does not change: the question is always whether the right was clearly established. "For a right to be deemed clearly established, the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Buckley v. Rogerson, 133 F.3d 1125, 1128 (8th Cir. 1998) (quoting Anderson, 483 U.S. at 640). "'We do not require a case directly on point' before concluding that the law is clearly established, 'but existing precedent must have placed the statutory or constitutional question *beyond debate*.'" Stanton, 571 U.S. at ___, 134 S. Ct. at 5 (emphasis added) (quoting al-Kidd, 563 U.S. at ___, 131 S. Ct. at 2083).

To meet their burden to show the right at issue was clearly established, "plaintiffs [must] point either to 'cases of controlling authority in their jurisdiction at the time of the incident' or to 'a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.'" Al-Kidd, 563 U.S. at ___, 131 S. Ct. at 2086 (Kennedy, J., concurring) (quoting Wilson v. Layne, 526 U.S. 603, 617 (1999)). Without one or the other, qualified immunity applies—regardless of whether there is a factual dispute about what occurred—because the defendant did not have "fair and clear warning" that his conduct was unlawful. Lanier, 520 U.S. at 271. This is true "whether or not the constitutional [or statutory] rule applied by the [district] court [i]s correct," because qualified immunity applies unless the rule is "beyond debate." Stanton, 571 U.S. at ___, 134 S. Ct. at 8 (internal quotation omitted).

### E.    Conclusion

I respectfully dissent from whatever the majority affirms. I concur in the majority opinion's Part I and first four paragraphs of Part II, also concurring in the reversal, vacation, and remand.

_____