MELLOY, Circuit Judge.
Christopher Payne is an inmate at Nebraska’s Tecumseh State Correctional Institution (the prison). Prison officials cen *699 sored and confiscated Payne’s incoming and outgoing mail. Payne filed a lawsuit asserting various claims, including 42 U.S.C. § 1983 claims alleging violations of the First and Fourteenth Amendments. Payne named several of the prison officials as defendants, asserting that they wrongfully censored and confiscated his mail.
The officials moved for dismissal on the pleadings pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting qualified immunity. The district court did not rule on the motion but converted it to a motion for summary judgment. The officials reasserted qualified immunity. The district court granted summary judgment to the officials in part on a limited issue, but otherwise denied summary judgment and again declined to rule on qualified immunity. Finally, the officials filed a motion for reconsideration seeking a ruling on qualified immunity. The district court denied the motion for reconsideration. The officials appeal.
We affirm in part, reverse in part, and remand. When an official properly and timely files a motion for dismissal or for summary judgment asserting qualified immunity, the official is entitled to a ruling on the issue of qualified immunity. As such, the district court must issue a reviewable ruling — either granting or denying qualified immunity — before requiring the officials to progress further in litigation at the district court.
I. Background
A. Facts
Payne is serving sentences for two convictions of first-degree sexual assault of a child. See Neb.Rev.Stat. § 28-319.01. Between October 13, 2010, and March 23, 2011, prison officials reviewed and held correspondence mailed by and to Payne. According to the officials, the censored correspondence was pedophilia-related and included efforts by Payne to obtain sexually related stories, pictures, and information about children, including information about Payne’s prior victims. Also according to the officials, some of the correspondence indicated Payne was attempting to share such materials and run a business (from inside the prison) selling such materials to others both inside and outside the prison. The officials assert that some correspondence suggested Payne was attempting to contact his prior victims. The officials explain that a March 23, 2011 letter mailed to Payne contained: potential contact information for some of Payne’s victims; a reference to “BL” (which the officials interpret as meaning “boy love”); an explanation that “the reason we can’t find a good address for [victim’s name[1]] is that he is a kid”; and “possible addresses” for a certain individual with notes that two of the addresses were associated with someone sharing the individual’s name but who were “too old.”
The officials confiscated the mail and alerted the FBI, which ultimately decided not to open a criminal investigation. Payne disputes the officials’ classification of his mail as pedophilia-related and disputes assertions regarding the contents of his mail. Prison officials continue to hold the confiscated mail, and, other than the March 23, 2011 letter, such mail has not been made available for the courts’ review.
B. Procedural History
On February 11, 2011, Payne filed his § 1983 complaint in the District of Nebraska against several of the officials. On September 26, 2011, the officials moved to dismiss the individual capacity claims on the pleadings under Federal Rule of Civil *700 Procedure 12(b)(6) because the officials “are immune from suit pursuant to the doctrine of qualified immunity.” The district court did not rule on the motion to dismiss. Rather, on March 8, 2012, the district court issued an order instructing the officials to supplement the record with evidence supporting their claims for qualified immunity. In a May 15, 2012 order, the district court stated “it is now apparent that the court must consider matters outside of the pleadings to resolve this matter.” The district court stated that it would treat the pending motions for dismissal as motions for summary judgment and provided the parties with an opportunity to submit additional evidence. The district court specifically directed the officials “to file, under seal, a copy of the March 23, 2011, letter.”
In response to the district court’s conversion of their dismissal motion into a summary judgment motion, the officials again invoked qualified immunity. At the same time, the officials complied with the district court’s order and filed under seal a copy of the March 23, 2011 letter. They also submitted a memorandum explaining certain names and terms used in the letter. On September 19, 2012, the district court granted summary judgment to the officials on the “First and Fourth Amendment claims relating to the censoring and monitoring of [Payne’s] mail as part of a criminal investigation.” The district court denied the motion for summary judgment in all other respects, stating, “questions of fact remain regarding the content of [Payne’s] incoming and outgoing mail and the reasonableness of the [officials’] continued detention of that mail.” The district court identified the surviving claims as “claims regarding the continued detention of [Payne’s] mail after [the FBI] declined to initiate a criminal investigation.” The district court’s order did not decide whether the officials were entitled to qualified immunity or assess whether any alleged violations were of clearly established federal law.
The officials then filed a “Motion for Reconsideration and Determination of Qualified Immunity.” The district court denied the motion without ruling on qualified immunity. The officials filed this interlocutory appeal.
II. Discussion
Ordinarily, our court lacks jurisdiction to review denials of motions to dismiss and motions for summary judgment because neither is a final decision. See, e.g., Swint v. Chambers Cnty. Comm’n, 514 U.S. 35, 41-42, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995). When a denial turns on qualified immunity, however, our court has appellate jurisdiction to decide whether, as a purely legal matter, the denial was erroneous. See, e.g., Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Our court has jurisdiction over such interlocutory appeals because “[qjualified immunity is ‘an immunity pom suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.’ ” Scott v. Harris, 550 U.S. 372, 376 n. 2, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoting Mitchell, 472 U.S. at 526, 105 S.Ct. 2806).
“Like denials of qualified immunity, a refusal to rule on qualified immunity is effectively unreviewable on appeal because once the defendant has had to proceed to trial, he or she has lost the benefit of qualified immunity, that is, the entitlement to be free from suit.” Parton v. Ashcroft, 16 F.3d 226, 228 (8th Cir.1994) (exercising jurisdiction and remanding “for a ruling on the issue of qualified immunity”). The potentially lost benefits of qualified immunity include the costs and *701 expenses of litigation, and discovery in particular, which is a type of burden distinct from appeals and other lawyer-driven aspects of a case. Other lost benefits include the lost opportunity to appeal to our court and, ultimately, to petition the Supreme Court for certiorari. For this reason, both the Supreme Court and our court “repeatedly have stressed the importance of resolving [qualified] immunity questions at the earliest possible stage in litigation.” Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam); O’Neil v. City of Iowa City, Iowa, 496 F.3d 915, 917 (8th Cir.2007).
Our court, therefore, has jurisdiction over interlocutory appeals arising not only from a district court’s reasoned denial of qualified immunity, but also from a district court’s failure or refusal to rule on qualified immunity. In the latter instance, however, our court only exercises its jurisdiction to compel the district court to decide the qualified immunity question. See, e.g., Robinson v. Mericle, 56 F.3d 946, 947 (8th Cir.1995) (per curiam) (remanding “to the district court with directions to decide the issue of qualified immunity”); Craft v. Wipf, 810 F.2d 170, 173 (8th Cir.1987) (per curiam) (finding appellate jurisdiction for the limited purpose of remanding for a ruling on qualified immunity). In Craft, for example, the district court “simply did not rule on the qualified immunity issue,” effectively depriving the defendant of qualified immunity. Id. at 173. Citing the Fifth Circuit’s holding in Helton v. Clements, 787 F.2d 1016 (5th Cir.1986) (per curiam), that “an order which declines or refuses to rule on ... a claim of immunity ‘is an appealable “final decision” within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment,’ ” id. at 1017 (quoting Mitchell, 472 U.S. at 530, 105 S.Ct. 2806), our court “took jurisdiction of the appeal” for the limited purpose of remanding “to the District Court for a ruling on the qualified immunity issue,” Craft, 810 F.2d at 173.
Because the district court in the present case did not decide whether the officials are immune from Payne’s suit, we have jurisdiction to order a remand. Exercising that jurisdiction, we now, as we must, remand the case for the district court to conduct the proper analysis. See, e.g., Craft, 810 F.2d at 173. It is “certain, and the case law is clear, that [the officials] are entitled to a thorough determination of their claim[s] of qualified immunity if that immunity is to mean anything at all.” O’Neil, 496 F.3d at 918.
We write further because, although we are compelled to remand, we are sympathetic with the district court in this case and understand clearly why the district court followed the seemingly reasonable, but impermissible, path that it chose. The prison officials are legally entitled to a ruling on their assertions of qualified immunity. In the present case, as with many cases, however, such a ruling would appear to be at the expense of efficiently getting to the heart of the material issue in the case. Here, that issue clearly involves a simple fact question: what is in the withheld mail (much of which is mail that only the officials have seen)?
In this regard, the contents of the withheld mail appear to be contested.[2] As we understand the core legal issues surrounding the allegations in this case, any analysis of the merits of the qualified immunity defense will require the district court to assess whether the regulation or policy at issue under which the mail is being held is valid and neutral and whether it addresses *702 a legitimate penological concern. See Murphy v. Mo. Dep’t of Corr., 372 F.3d 979, 985-86 (8th Cir.2004). A qualified immunity analysis will then require the district court to conduct an independent review of the evidence to determine if the officials have demonstrated an exaggerated response to those penological concerns in relation to a particular item of mail that has been confiscated. Id. See also Williams v. Brimeyer; 116 F.3d 351, 354 (8th Cir.1997) (stating that the court must conduct “ ‘an independent review of the evidence’ ” to determine if the prison officials response to prison concerns was “ ‘exaggerated’ ” (quoting Salaam v. Lockhart, 905 F.2d 1168, 1171 (8th Cir.1990))); Kaden v. Slykhuis, 651 F.3d 966, 969 (8th Cir.2011) (per curiam) (“[I]f a valid prison regulation is applied to particular mail items in such a way as to negate the legitimate penological interest, the regulation may be unconstitutional as applied to those items.... On appeal, we must independently review the evidence to determine whether [the] decision to apply the regulation and withhold [the particular mail items] was an exaggerated response to prison concerns and therefore unconstitutional as applied.”) (internal citations and quotation marks omitted). In the absence of such evidence, the district court is bound to take the plaintiffs allegations as true and presume that the mail does not, in fact, contain material that runs afoul of any neutral and valid restrictions. As such, it would seem that if the content of the mail is contested, the district court cannot grant qualified immunity to the officials in this case without first reviewing the withheld mail.
Simply put, the district court appears to have correctly determined that this is a case where, ultimately and eventually, the documents will matter for the qualified immunity analysis. Nevertheless, the district court may not force public officials into subsequent stages of district court litigation without first ruling on a properly presented motion to dismiss asserting the defense of qualified immunity. Courts may ask only whether the facts as alleged plausibly state a claim and whether that claim asserts a violation of a clearly established right. Kaden, 651 F.3d at 969 (“At this extremely early stage of the litigation, there is a reasonable inference that [the prison]’s policy was unconstitutionally applied to the censored publication.” (citing Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (“A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.”))).
In summary, all parties at all times are entitled to their appropriate share of process. The defendants in this case, like any public officials, are entitled to a reasoned denial or grant of their claim of qualified immunity at the motion to dismiss stage, the summary judgment stage, and any other permissible stage at which a proper motion is filed. By following the path described herein, courts will ensure in all cases that public officials receive this process.
III. Conclusion
We reverse the district court’s order converting the officials’ motion to dismiss into a motion for summary judgment; vacate the district court’s partial denial of the officials’ motion for summary judgment; and remand with instructions for the district court to decide, consistent with this opinion, whether the officials are entitled to qualified immunity on the pleadings under Rule 12(b)(6).

. To protect Payne’s victims, we do not in-elude identifying information in this opinion.

. And perhaps not frivolously given the FBI's election not to pursue the matter.